[No. 61594-7-I. Division One. July 20, 2009.]

AVANADE, INC., *Appellant*, v. THE CITY OF SEATTLE, *Respondent*.

*Scott M. Edwards* (of *Perkins Coie, LLP*), for appellant.

*Thomas A. Carr, City Attorney,* and *Kent C. Meyer, Assistant,* for respondent.

¶1 DWYER, A.C.J. — This is a taxation case. The sole issue is whether the city of Seattle (City) used an unlawful method to calculate business and occupation (B&O) taxes owed by Avanade, Inc., between January 2000 and June 2004 (the audit period). On cross motions for summary judgment, the superior court ruled that the City properly

calculated that portion of Avanade's revenue subject to the B&O tax—revenue obtained from business conducted within Seattle—by using Avanade's payroll costs to estimate the revenue generated by Avanade's Seattle employees (the cost apportionment method). Avanade appeals, contending that the City was required to use the actual bills that clients paid for work done by Avanade's Seattle employees (the separate accounting method). We conclude that, while the City was not required to utilize separate accounting, the manner in which it utilized cost apportionment improperly attributed revenue to Seattle that should have been attributed elsewhere. Because of this, the City's approach violated the United States Constitution's commerce clause.[1] Accordingly, we reverse.

I

¶2 Avanade is an information technology consulting company. Its headquarters are located in Seattle. It also has 10 other offices in the United States, divided into four operating regions—West, South, Central, and East. In the West region, the only cities in which Avanade has offices are Seattle, San Francisco, and Denver.

¶3 Because of the nature of its work, most of Avanade's consulting is done on-site at its clients' locations. Many of Avanade's employees do not work regularly at any office but instead are physically located in states and cities in which Avanade has no office at all.

¶4 Avanade bills for its services on an hourly basis. Its employees record the amount of time that they work on any project and the location where the work is performed. In the words of Avanade's tax manager, all work performed by Avanade employees that is billed to clients, "whether performed by an employee working in the field at a client's location or a manager working at one of Avanade's offices, is recorded to the project and the associated revenue is allocated to the location where that billable activity was

---

[1] U.S. Const. art I, § 8, cl. 3: "The congress shall have power . . . [t]o regulate commerce with foreign nations, and among the several states, and with the Indian Tribes."

performed." Most of the company's corporate officers are located in Seattle, as is the West region manager. Thus, although many employees in the Seattle office do not do work that is billed to clients, they do formulate company policy, plan company strategy, and generate and manage clients.

¶5 In 2006, the City audited Avanade for B&O tax compliance. Avanade had paid $129,106.91 in B&O taxes to the City during the audit period. The audit revealed that Avanade had, during the audit period, erroneously paid Seattle B&O taxes on all revenue from services performed anywhere in Washington, not just those that were performed in Seattle. Based on the number of hours that employees actually working in Seattle billed to clients (i.e., the separate accounting method), Avanade should have owed only $81,584.56 in City B&O taxes during the audit period. Stated another way, correct separate accounting would have resulted in a $47,522.35 tax refund to Avanade.

¶6 But the City did not use separate accounting. Instead, the City stated:

> Seattle Municipal Code, subsection 5.45.080 D and 5.44.428,[2] state that if the allocation of gross income does not fairly reflect gross income derived from business activities within Seattle, gross income subject to the Seattle B&O tax can be determined by the ratio that the cost of doing business within the City bears to the cost of doing business both within and without the City. Accordingly, we have used the cost apportionment method for this audit.
>
> . . . .
>
> For 2002, 2003, and the first six (6) months of 2004, the Seattle costs were calculated strictly from the payroll expenses. Per Seattle Rule 5-032, Service and Other business Activities, the payroll expenses were assigned to an office location. The

---

[2] The City amended the taxation provisions of the Seattle Municipal Code (SMC) during the audit period, replacing former chapter 5.44 SMC (2001) with current chapter 5.45 SMC. The parties agree that these amendments had no substantive effect for purposes of the issues raised herein. Thus, further reference is made only to current chapter 5.45 SMC.

salaries of the employees located in California and Colorado were sourced to the San Francisco and Denver offices, respectively. The salaries of the other employees located in the West Region were source [sic] to the Seattle office, which controls the employees. All payroll expenses sourced to the Seattle office were compared to the total company payroll to calculate the Seattle ratio.

The rule referenced by the City, Seattle Revenue Rule 5-032, is for all pertinent purposes the 2005 reenactment of former Seattle Business Tax Rule 5-44-194 (1997), which was in effect until December 31, 2001, but was repealed thereafter. The rule provides that

> [p]ersons engaged in a business taxable under the service classification with offices or places of business located both within and without the City shall apportion their gross revenue to the office or place of business which rendered or generated the revenue or to which the revenue is attributable. Where it is not practical to determine such apportionment by separate accounting methods or such methods results in an inappropriate or unacceptable apportionment of revenue according to the Director, the taxpayer shall apportion to the City that proportion of gross revenue which the cost of doing business within the City bears to the total cost of doing business both within and without the City. For apportionment purposes all costs must be assigned to an office location.

This rule reflects Seattle Municipal Code (SMC) 5.45.080, which provides:

> C. A person who maintains an office or place of business in the City and also elsewhere
>
> . . . [s]hall be taxable on that portion of his gross income or gross proceeds of sales, or value of products that is derived from business activity rendered by, generated from, or attributable to the office or place of business located within the City.
>
> . . . .
>
> Allocations of amounts under this Section shall be made in accordance with and in full compliance with the provisions of the interstate commerce clause of the United States Constitution where applicable.

D. If the Director determines that the allocation of gross income from business activities for a person subject to subsection C above . . . does not fairly reflect gross income derived from business activities within the City, the Director shall determine such gross income by either of the following methods: (a) by a fair and equitable formula agreed upon by the Director and the taxpayer after a consideration of the facts; or (b) by the ratio that the cost of doing business within the City bears to the cost of doing business both within and without the City. For apportionment purposes, all costs must be assigned to an office location.

¶7 Based on Avanade's payroll records (including the salaries of all of Avanade's corporate officers located in Seattle), the City assessed $302,449.80 in B&O taxes, including interest and penalties, against Avanade for the audit period. Avanade paid the tax under protest.

¶8 It then filed this lawsuit seeking a refund of all payments over $81,584.56 and a declaration that the City's "assessment of tax is contrary to its tax ordinance, exceeds the City's taxing authority under Washington law and is unconstitutional."

¶9 On cross motions for summary judgment, the superior court upheld the City's tax assessment. Avanade appeals.

## II

¶10 This case "was resolved below on cross-motions for summary judgment, and thus our review is de novo." *Cmty. Telecable of Seattle, Inc. v. City of Seattle, Dep't of Executive Admin.*, 164 Wn.2d 35, 41, 186 P.3d 1032 (2008). Likewise, the proper construction of a city taxation ordinance is a legal question that is reviewed de novo on appeal, but the " 'burden is on the taxpayer to prove that a tax paid by him or her is incorrect.' " *Group Health Coop. v. City of Seattle*, 146 Wn. App. 80, 88, 189 P.3d 216 (2008) (quoting *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007)).

### III

¶11 The sole issue on appeal is whether the City lawfully utilized cost apportionment accounting to calculate that portion of Avanade's revenue subject to the City's B&O tax during the audit period. We conclude that, contrary to Avanade's contention, neither the City's own tax ordinances nor our cases interpreting the federal constitution required the City to utilize separate accounting methods. However, we also conclude that the specific manner in which the City utilized cost apportionment in this case unconstitutionally burdened interstate commerce by improperly attributing revenue to Seattle that should have been attributed elsewhere. Thus, this method failed to meet the SMC 5.45-.080(C) requirement that "[a]llocations of amounts under this Section shall be made in accordance with and in full compliance with the provisions of the interstate commerce clause of the United States Constitution."

■ ¶12 Avanade does not dispute that it is subject to the City's B&O tax, or that this tax requires some method of apportionment between Avanade's in-city and out-of-city revenues. Rather, Avanade's initial contention is that the City's decision to utilize cost apportionment rather than separate accounting violated the City's own B&O tax ordinance because that ordinance contains a presumption that separate accounting will be used. According to Avanade, the City has failed to articulate a legitimate basis upon which to conclude that separate accounting does not "fairly reflect" Avanade's gross income derived from its Seattle business activities.

¶13 The problem with Avanade's contention is that, under Seattle's municipal code, the determination of whether separate accounting does or does not "fairly reflect gross income derived from business activities within the City," SMC 5.45.080(D), is given over to the discretion of the City's director of executive administration, so long as that determination is "made in accordance with and in full

compliance with the provisions of the interstate commerce clause of the United States Constitution." SMC 5.45.080(C). The parties bandy about competing definitions of "fair," but the fact is that—insofar as the only matter under examination is whether the City complied with its own code—the propriety of the director's determination that a particular accounting method fails to "fairly reflect" in-city revenue is not a proper subject of de novo judicial review.

¶14 Rather, it is properly reviewed only to determine whether Avanade, as the taxpayer, met its burden of demonstrating that the amount of the tax was incorrect and, then, only under the considerably more deferential standards applied to the determinations of taxation officials acting within their particular area of expertise. *See Group Health*, 146 Wn. App. at 91. Contrary to Avanade's contention, whether the City met its "burden" of showing that separate accounting was an inferior tax calculation method is not the proper inquiry. SMC 5.45.080(C) does presume separate accounting. But whether departure from that presumption is justified is largely a decision for the City itself, not for the courts in the first instance.

¶15 A state Department of Revenue tax determination that Avanade puts forward in support of its case actually illustrates why this is so. *See* Wash. Dep't of Revenue, Determination No. 98-022, 17 Wash. Tax Dec. 336 (1998). While Avanade is correct that the state Department of Revenue came to a conclusion substantially opposite of the one reached by the City in this case, that agency's determination is itself a manifestation of the more pertinent principle—i.e., that issues such as which accounting standard is more accurate are more properly the province of the taxing authority than of the courts. The City correctly observes that it was not required to adopt the state Department of Revenue's separate accounting approach as to service revenue apportionment. Indeed, since the time of the audit period, our state statutes have been amended to *require* that municipal B&O tax ordinances presume that cost apportionment is the superior method for calculating

in-city service revenue. *See* RCW 35.102.130(3) (mandatory municipal model B&O tax). Barring an affirmative showing by Avanade that separate accounting more correctly calculated revenue generated by in-city activities, the City was entitled to utilize cost apportionment.

¶16 Here, Avanade fails to show that separate accounting is inherently more accurate than is cost apportionment in determining the portion of its revenue-generating activities that occurred within Seattle. As the City correctly observes, separate accounting entirely distributes to Avanade's largely out-of-city billing employees all value created by Avanade's principal corporate officers. That is, under separate accounting methods, Avanade essentially assigns *no* value to any of the business activities undertaken by its most senior employees, instead spreading all such value among the disparate revenue streams represented by its on-site consultants. Avanade minimizes its headquarters' business activity, referring to it as simple "support" for the actual revenue-generating functions of the company. But, taken to its logical conclusion, Avanade's contention is simply not credible. If all of its corporate officers were vaporized tomorrow, Avanade would not continue to earn money at a rate comparable to its current revenue. This, in turn, demonstrates that the activities undertaken at Avanade's headquarters *do* constitute revenue-generating business activities located within the City's geographic limits, which are subject to the City's B&O tax. Thus, theoretically, there is no problem with the City's relying upon cost apportionment rather than separate accounting to calculate the portion of business activity that occurs within the City and so is subject to the City's B&O tax.

■■ ¶17 Moreover, there is no legitimate dispute that cost apportionment, if done properly, is a constitutional method for determining that portion of a company's income derived from in-city activities for purposes of calculating B&O taxes. The United States Supreme Court has long recognized that apportionment based on payroll costs is a

constitutional method for calculating B&O tax liability. *E.g., Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 186, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995) (state "could constitutionally compute taxable income assignable to a multijurisdictional enterprise's in-state activity by apportioning its combined business income according to a formula 'based, in equal parts, on the proportion of [such] business' total payroll, property, and sales which are located in the taxing State' " (alteration in original) (quoting *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 170, 103 S. Ct. 2933, 77 L. Ed. 2d 545 (1983))). Conversely, the Court has been unambiguous in stating that separate accounting is not constitutionally required. *E.g., Mobil Oil Corp. v. Comm'r of Taxes of Vt.*, 445 U.S. 425, 438, 100 S. Ct. 1223, 63 L. Ed. 2d 510 (1980) ("Although separate geographical accounting may be useful for internal auditing, for purposes of state taxation it is not constitutionally required.").

¶18 The problem in this case arises because of the *manner* in which cost apportionment was utilized. The federal constitution's commerce clause—preserving to Congress the authority to regulate interstate commerce—may, by negative implication, render a local tax regulation unconstitutional if the regulation has the effect of burdening interstate commerce with the risk of multiple taxation. *Gen. Motors Corp. v. Washington*, 377 U.S. 436, 440, 84 S. Ct. 1564, 12 L. Ed. 2d 430 (1964), *overruled on other grounds by Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987). We recently discussed the commerce clause's limitations on the City's taxing power in *KMS Financial Services, Inc. v. City of Seattle*, 135 Wn. App. 489, 503-04, 146 P.3d 1195 (2006), *review denied*, 161 Wn.2d 1011 (2007):

> The United States Supreme Court has set out a four-part test to determine whether a tax violates the federal commerce clause, including that clause's negative command known as the dormant commerce clause. First, the tax must apply to an activity with "substantial nexus" to the taxing state. Second, it

must be "fairly apportioned." Third, it must not discriminate against interstate commerce. And fourth, it must be fairly related to services or benefits provided by the state.

(Citations omitted) (quoting *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977)). As we recognized in *KMS*, "[t]he 'central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction.'" *KMS*, 135 Wn. App. at 504 (quoting *Goldberg v. Sweet*, 488 U.S. 252, 260-61, 109 S. Ct. 582, 102 L. Ed. 2d 607 (1989)).

 ¶19 Here, as in *KMS*, only the commerce clause's fair apportionment requirement is implicated by the City's taxation method. In *KMS*, we summarized the minimum constitutional standards that the City's B&O taxation method is required to meet in order to be considered "fairly apportioned":

> The Constitution does not require a single apportionment formula. Rather, "a tax is fairly apportioned [if] it is internally and externally consistent." *Goldberg*, 488 U.S. at 261. Internal consistency requires a tax to be "structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg*, 488 U.S. at 261. "The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Goldberg*, 488 U.S. at 262.

*KMS*, 135 Wn. App. at 504 (alteration in original). We then described the considerations that go toward determining whether a tax is externally consistent:

> To determine external consistency, the court looks to the "economic justification for the State's claim upon the value taxed." *Jefferson Lines*, 514 U.S. at 185. There must be "'a rational relationship between the income attributed to the state and the intrastate values'" of the business being taxed. *Hunt-Wesson, Inc. v. Franchise Tax Bd. of Cal.*, 528 U.S. 458, 464, 120 S. Ct. 1022, 145 L. Ed. 2d 974 (2000) (internal quotation marks omitted) (quoting *Container Corp.*[, 463 U.S.

at 165-66]. The measure of the tax "must actually reflect a reasonable sense of how income is generated." *Container Corp.*, 463 U.S. at 169. A local government "may not tax value earned outside its borders." *Allied-Signal, Inc. v. Dir., Div. of Taxation*, 504 U.S. 768, 777, 112 S. Ct. 2251, 119 L. Ed. 2d 533 (1992). A tax that is "out of all appropriate proportion to the business transacted by the [taxpayer] in that State" violates the commerce clause. *Hans Rees' Sons, Inc. v. N. Carolina ex rel. Maxwell*, 283 U.S. 123, 135, 51 S. Ct. 385, 75 L. Ed. 879 (1931).

*KMS*, 135 Wn. App. at 504-05 (last alteration in original).

¶20 In *KMS*, we examined the City's imposition of its B&O tax on the entire commission from sales of securities made wholly outside of the City's geographic boundaries, but which contributed revenue to the Seattle office of a securities brokerage, KMS Financial Services. We held that "attributing the entire proceeds of KMS's registered representatives to KMS's Seattle office because that is KMS's sole office violates the external consistency requirement of federal commerce clause jurisprudence." *KMS*, 135 Wn. App. at 509. Adopting the rationale of a Pennsylvania court, we reasoned that this was so because taxing the entire gross proceeds of an out-of-city transaction, based solely on the fact that the transaction occurred in a state in which the taxpayer did not have an office, resulted in a tax that "was 'out of all appropriate proportion to' and had no 'rational relationship' with" the taxpayer's business activities within Seattle. *KMS*, 135 Wn. App. at 506 (quoting *Northwood Constr. Co. v. Twp. of Upper Moreland*, 579 Pa. 463, 486, 856 A.2d 789 (2004)).

¶21 Avanade appears to draw the conclusion from this holding that the City was constitutionally *required* to use separate accounting rather than cost apportionment, primarily based on our statement in *KMS* that "[t]he City must fairly apportion KMS's gross receipts based on where the income-generating activity occurred." 135 Wn. App. at 512. If so, Avanade is wrong. As discussed above, the United States Supreme Court has long considered cost apportionment to be a constitutionally valid method of determining where income-generating activities occurred.

¶22 Avanade is correct, however, that the City's use of cost apportionment *in this case* suffers from precisely the same defect in external consistency that rendered unconstitutional the City's method of apportioning its B&O tax in *KMS*. This is so because the City assigned *all* payroll costs for every single state in Avanade's Western Region (other than California and Colorado) to the Seattle office, apparently for no other reason than because Avanade did not have a physical office in those states. That is, the City failed to allocate *any* revenue for on-site work in states without physical Avanade offices to those states, notwithstanding that the Avanade consultants at issue were based in those states, and notwithstanding that the work was performed in those states exclusively for businesses also based in those states.

¶23 The only justifications that the City offers for this taxation of business activities essentially unrelated to Seattle are, first, that the City has itself enacted taxation rules requiring that it attribute every employee to an office for payroll purposes and, second, that Avanade failed to create and provide documents that helped the City satisfy these rules by stating where employees are "permanently assigned." In response to the latter contention, we observe that it is not Avanade's responsibility to render lawful the City's otherwise unconstitutional tax scheme, particularly if the demanded documentation requires Avanade to categorize its employees in a manner that bears little, if any, relationship to Avanade's actual business.

¶24 Moreover, contrary to the City's contention, it was, in fact, in possession of documentation that would have allowed it to allocate income earned by Avanade's employees to the cities in which they actually lived and worked. It simply chose to disregard this information because the states in which the employees' home cities were located did not contain Avanade offices. Although the City asserts that it may constitutionally allocate to Seattle revenue obtained by Avanade's out-of-state employees for performing out-of-state work because the Seattle office "controls" those em-

ployees, nothing whatsoever in the record supports this assertion. Rather, it appears that the City makes this assertion solely based on the fact that the states in which the employees in question operated did not themselves contain Avanade offices.

¶25 This is directly contradictory of our ruling in *KMS*, in which we expressly rejected the contention that revenue may be attributed to Seattle simply because the taxpayer does not have an office where the revenue was generated. With respect to the City's contention that its own taxation ordinances required it to take this approach, we need only make the unremarkable observation that the fact that the City's behavior arose out of compliance with its own code does not legitimize taxation methods otherwise violative of the federal constitution.

¶26 Avanade has met its burden of showing that the City's B&O tax assessment against it was unlawful and, hence, incorrect. Avanade contends that, this being the case, the proper remedy is for us to remand for entry of summary judgment in Avanade's favor, effectively ordering the City to refund to Avanade all B&O tax payments made for the audit period in amounts greater than the $81,584.56 tax liability that results from application of the separate accounting method. However, whether any factual issues remain that would preclude entry of summary judgment in Avanade's favor is a determination more properly made by the trial court than by us.

¶27 Reversed and remanded for further proceedings not inconsistent with this opinion.

AGID and BECKER, JJ., concur.