# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WEDBUSH SECURITIES, INC., a California corporation, | ) ) ) | No. 71932-7-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | PUBLISHED OPINION |
| THE CITY OF SEATTLE, a municipal corporation, | ) ) ) ) | |
| Appellant. | ) ) | FILED: August 10, 2015 |

TRICKEY, J. — Business and occupation (B&O) taxes may be assessed for the privilege of doing business in a city. Under RCW 35.102.130 an employer is required to pay taxes on both payroll and service income. When that service income is derived from customer contacts by telephone and the Internet, the entire amount is subject to the B&O tax. This is particularly true here, where the employer established an office in the city of Seattle primarily to compete with other similar businesses. We affirm.

## FACTS

Wedbush Securities, Inc. (Wedbush) is a registered securities broker/dealer, headquartered in Los Angeles, California. It has offices and customers throughout the United States, including Seattle, Washington. The Seattle office has a retail stock brokerage for telephone and Internet customers; and for institutional investors, a sales department. Wedbush employs approximately 28 people in Seattle and its income is primarily derived from

commissions received for services performed by its employees. The majority of contact with customers occurs through the telephone and the Internet.

The city of Seattle (City) conducted an audit for the period from January 1, 2008 through June 30, 2012. The City concluded that Wedbush had underpaid its taxes by failing to include income derived from all its customers. For the audit period, Wedbush had a total gross service revenue of $28,670,412.02, which the City argues should have been reported in its entirety. Instead, Wedbush only reported revenue that was obtained from those clients with Seattle addresses.

The hearing examiner upheld the City's B&O tax assessment. Wedbush filed a writ of review in superior court challenging the hearing examiner's decision.[1] The superior court affirmed the hearing examiner.

Wedbush appeals, arguing that the City misapplied the service income factor in the statutory apportionment formula by including income derived from all customers rather than income derived only from those customers who had Seattle addresses.

## ANALYSIS

In an appeal of a statutory writ, we review the findings of fact for substantial evidence and whether the conclusions of law as applied are erroneous. Getty Images, Inc. v. City of Seattle, 163 Wn. App. 590, 599, 260 P.3d 926 (2011). When, as here, the appellant does not assign error to the hearing examiner's findings, they are verities on appeal. General Motors Corp. v. City of Seattle, Fin. Dep't, 107 Wn. App. 42, 47-48, 25 P.3d 1022 (2011).

---

[1] RCW 7.16.120.

2

A B&O tax is assessed for the privilege of conducting business in the taxing jurisdiction. Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't, 160 Wn.2d 32, 44, 156 P.3d 185 (2007) (upholding cities' imposition of B&O tax on gross receipts of wholesale auto sales to independent dealers within cities).

Under Seattle Municipal Code (SMC) 5.55.140(B), the City's assessment is prima facie correct.[2] American Honda Motor Co., Inc. v. City of Seattle, Dep't of Exec. Admin., 167 Wn. App. 578, 583 n.4, 273 P.3d 498 (2012). We review de novo the applicability of a city taxation ordinance as a legal question. Avanade, Inc. v. City of Seattle, 151 Wn. App. 290, 297, 211 P.3d 476 (2009).

On January 1, 2008, RCW 35.102.130 established new allocations and apportionment requirements for cities with a gross receipt business tax.[3] Under RCW 34.102.130, gross income subject to tax under the service and other business activities classification is apportioned using a two-factor formula. The two factors are payroll and service income. The state mandated that municipalities in Washington use a prescribed two-factor apportionment method for service classification tax payers such as Wedbush, while businesses selling tangible personal property allocate the income to the jurisdiction where delivery takes place.

Wedbush does not dispute that the two-factor formula is applicable to it. Rather, Wedbush claims that the City misconstrued its ordinance as requiring it to

---

[2] SMC 5.55.140(B) provides:
  The Director's assessment or refund denial shall be regarded as prima facie correct, and the person shall have the burden to prove that the tax assessed or paid by him is incorrect, either in whole or in part, and to establish the correct amount of tax.
[3] The City adopted RCW 35.102.130 in SMC 5.45.081.

3

report all income no matter where the customer resides. RCW 35.102.130(3)(b)[4] provides:

> The service income factor is a fraction, the numerator of which is the total service income of the taxpayer in the city during the tax period, and the denominator of which is the total service income of the taxpayer everywhere during the tax period. Service income is in the city if:
> (i) The customer location is in the city; or
> (ii) The income-producing activity is performed in more than one location and a greater proportion of the service-income-producing activity is performed in the city than in any other location, based on costs of performance, and the taxpayer is not taxable at the customer location; or
> (iii) The service-income-producing activity is performed within the city, and the taxpayer is not taxable in the customer location.

Since 2008, as posted on its web site, the City has interpreted "customer location" as the place where the majority of physical contacts with a customer occur.[5] In accord with that interpretation, there is no customer location because there are no physical contacts, thus triggering RCW 35.102.130(3)(b)(ii). The majority of the contacts take place in Seattle.

Wedbush argues that the term "contact" is not ambiguous and that it necessarily means any contact. The City argues that the word "contacts" is ambiguous and that its interpretation is in accordance with normal statutory construction rules. Where terms are not defined in a statue, courts turn to their ordinary and contemporary dictionary meaning. Skagit County Pub. Hosp. Dist. No. 1 v. State, Dep't of Revenue, 158 Wn. App. 426, 437-38, 242 P.3d 909 (2010); Port of Seattle v. State, Dep't of Revenue, 101 Wn. App. 106, 111, 1 P.3d 607 (2000). Webster's Third New International Dictionary 490 (2002) defines

---

[4] See SMC 5.45.081(F)(2).
[5] Certified Appeal Board Record at 67.

"contacts" as an "association or relationship (as in physical or mental or business or social meeting or communication)"; "a condition or instance of meeting." Thus, the City's interpretation that the word "contacts" means physical contacts is appropriate.

In construing revenue statutes, courts use the usual maxims of construction. 3A SUTHERLAND STATUTORY CONSTRUCTION § 66.3 (6th ed. 2005). Accordingly, courts assume that every clause in a legislative enactment is intended and has meaning, giving effect to all language, rendering no portion meaningless or superfluous. Getty Images, 163 Wn. App. at 600; AOL, LLC v. Wash. State Dep't of Revenue, 149 Wn. App. 533, 542, 205 P.3d 159 (2009).

RCW 35.102.130 has cascading clauses to determine whether the service income is in the city. The first clause to determine service income (i) provides contacts as the determining factor of income. If there are no contacts, then clauses (ii) or (iii) come into play. Both of those clauses trigger a test of performance as the mechanism with which to establish income for the service factor when the customer contact is not established. Clause (ii) provides that where the income producing activity is in more than one location but the greater proportion of that service income is performed within the city rather than any other location, the income is attributed to the place of business in the city. Likewise clause (iii) provides for the income produced in the city where it is the sole basis of performance.

Thus, to give meaning to RCW 35.102.130(3)(b)(ii) and (iii), one has to interpret "customer location" as the place where physical contact occurs. To hold

otherwise would render the place of performance tests contained in clauses (ii) and (iii) meaningless.

The B&O tax is imposed for the "privilege of engaging in business activities within the City." SMC 5.45.050. Wedbush leases real property in the city and at all times its employees use the facilities therein. Wedbush's representative testified that the revenue generated in the Seattle office was generated through several operations that occur in other states. Wedbush argued that the business performed in Seattle is limited to an employee answering the telephone, taking an order, and placing that order on the computer which executes the trade.

Although some of Wedbush's activities that occur outside the Seattle area probably generate some revenue, Wedbush failed to provide any documentation or support thereof. On the record before the hearing examiner, the majority of income as defined in clause (ii) takes place in Seattle.

Moreover, when asked by the hearing examiner why Wedbush needed an office in Seattle, Wedbush responded that it was in order to attract business in the locale:

> [C]ompetitor-wise. Is why you need an office in Seattle. If you're the only one that doesn't have an office in Seattle, you're obviously not going to be able to gain the, any kind of business up against some of the larger wire houses in town. Everybody has a pretty much an office somewhere, from Edward Jones to Smith Barney to Wedbush.[6]

Wedbush has maintained a business in Seattle for approximately 45 years. Seattle is the place of performance of the service income producing activity.

---

[6] Clerk's Papers at 75.

The City's interpretation gives meaning to all sections of RCW 35.102.130. Accordingly, the superior court was correct in upholding the hearing examiner's decision.

Affirmed.

_Trickey, J_

WE CONCUR:

_Leach, J._                    _Dwyer, J._