## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF SEATTLE a municipal corporation, | ) ) ) | No. 78946-5-I |
| Respondent, | ) ) | |
| v. | ) ) | DIVISION ONE |
| KMS FINANCIAL SERVICES, INC., a Washington corporation, | ) ) ) | PUBLISHED OPINION |
| Appellant. | ) ) ) | FILED: February 24, 2020 |

MANN, A.C.J. — This is a taxation case. The sole issue is whether the city of Seattle (City) used an unlawful method to calculate business and occupation (B&O) taxes owed by KMS Financial Services, Inc., between January 2012 and March 2016 (the audit period).

The Commerce Clause of the United States Constitution requires state and local taxes be "fairly apportioned" so that the tax is imposed only on the portion of income reasonably attributed to the taxpayer's instate activities. Washington law imposes a similar limitation on local government taxes. To comply with these requirements, the City's B&O tax utilizes a two-factor apportionment method to calculate taxable revenue for service related businesses. One of those factors, the "payroll factor," compares the

amount of compensation the taxpayer pays in Seattle to the compensation it pays outside the City. As a result, the more a taxpayer pays for work performed outside the City, the less its income is apportioned to the City—which means a lower B&O tax.

KMS is headquartered in Seattle, but generates most of its income through the sale of securities by registered representatives located outside the City. In calculating the payroll factor for its B&O tax, KMS included the compensation paid to its registered representatives. During an audit, Seattle determined that KMS's registered representatives were not "employees" and therefore did not consider their income in determining the payroll factor. The result roughly tripled KMS's B&O tax liability.

KMS sought review in the King County Superior Court. After cross-motions for summary judgment, the superior court granted the City's motion and dismissed KMS's challenge. We agree with KMS that the City's B&O tax, as applied to KMS, is not fairly apportioned and is unconstitutional. In order to avoid unconstitutionality, the City should have instead treated KMS's registered representatives as employees which would have resulted in a valid, fairly apportioned tax. We vacate the trial court's order and remand for the trial court to grant KMS's motion for summary judgment.

I.

A. KMS and Registered Representatives

The parties stipulated to the undisputed, material facts.[1] KMS is a Washington corporation, headquartered in Seattle. KMS engages in the securities, insurance, and investment advisory business. KMS is a broker-dealer under the Securities Exchange Act of 1934 (1934 Act), and is registered with the Securities & Exchange Commission

---

[1] See also KMS Financial Services, Inc. v. City of Seattle, 135 Wn. App. 489, 493-95, 146 P.3d 1195 (2006) (explaining further KMS's use of registered representatives).

(SEC), the Financial Industry Regulatory Authority (FINRA) and the state securities regulators of all 50 states.

Under federal securities laws, a broker-dealers acts primarily through "registered representatives." Registered representatives are individuals, often referred to as stockbrokers or account executives, who provide a variety of investment related services. Under the 1934 Act, all individuals in the business of assisting others with securities trades are required to be registered representatives of a registered broker-dealer. KMS does not, except through its registered representatives, generate investment advice, make securities recommendations, or solicit the sale of securities or other financial products.

As a broker-dealer, KMS must supervise its registered representatives, oversee their licensing status, and require them to comply with industry rules and standards of conduct and procedures set out in its policy manual.

For federal income tax purposes, broker-dealers typically structure their operation so that the registered representatives are either deemed employees (Form W-2), or independent contractors (Form 1099). A broker-dealer's control and supervisory obligations under the 1934 Act and by FINRA with respect to the broker-dealer's registered representatives are identical regardless of whether the registered representatives are deemed independent contractors or employees for federal income tax purposes.

The National Association of Securities Dealers (NASD) Notice 86-65 provides that:

> Irrespective of an individual's location or compensation arrangements, all associated persons are considered to be employees of the firm with which

they are registered for purposes of compliance with NASD rules governing the conduct of registered persons and the supervisory responsibilities of the member. The fact that an associated person conducts business at a separate location or is compensated as an independent contractor does not alter the obligations of the individual and the firm to comply fully with all applicable regulatory requirements. [2]

A SEC letter dated June 18, 1982, addresses the status of registered representatives as employees of their associated broker-dealer. The letter addressed whether independent contractors are subject to the 1934 Act. "The critical question is whether a so-called independent contractor's activities are subject to control by a broker-dealer within the scope of Section 3(a)(B) of the Act." The letter explains that an independent contractor can be subject to the control of an employer under agency law. "It has been a long-standing policy of the Commission that independent contractors whose selling activities were controlled by their broker-dealer employers could be characterized as employees for the purposes of the Act."

KMS's revenue, through the sale of securities, is generated by approximately 350 registered representatives operating throughout the United States. By contract, KMS classifies its registered representatives as independent contractors. During the relevant period, KMS employed approximately 50 W-2 employees, most of whom worked in its Seattle headquarters. The registered representatives cultivate customers, process the opening of client accounts, provide investment advice, make securities recommendations, enter orders, and receive checks. The KMS W-2 employees handle administrative functions. KMS's W-2 employees do not provide or generate investment advice, make securities recommendations, or solicit the sale of securities and other financial products.

---

2 NASD was the predecessor to FINRA. Notice 86-65 continues to be in full force and effect.

A typical sale of securities involves: the client tells the registered representative to purchase or sell a security; the registered representative enters the client's order with KMS's primary clearing firm, Pershing LLC (Pershing); Pershing executes the trade and records it in the client's account; the client writes a check to KMS or to Pershing to pay for the transaction; the registered representative forwards the check to KMS, and a trade report is generated in KMS's office; after settlement of the trade (usually within three days), KMS receives a commission from Pershing and then pays the registered representative a commission based on its contract with the registered representative; KMS pays the registered representative between 85 and 90 percent of the commission from Pershing, depending on its contract with the registered representative who generated the order.

During the audit period, KMS paid its W-2 employees between approximately $2.6 million and $4 million annually, almost all of which (approximately 95 percent) went to Seattle-based employees. For that same period, KMS paid its registered representatives between approximately $70 million and $79 million, the vast majority of (around 85%) which went to representatives working outside of Seattle.

B. Seattle's B&O Tax

Seattle imposes a B&O tax on all persons engaging in business activity within the City. Seattle imposes B&O tax on KMS's "gross profits" under the "service and other" activity classification rate. SMC 5.45.050(F); see KMS Financial Services, Inc. v. City of Seattle (KMS I), 135 Wn. App. 489, 496, 146 P.3d 1195 (2006). When a business earns income both inside and outside of Seattle, the portion of that business's income attributable to Seattle must be determined. Beginning in 2008, all Washington cities

5

with a gross receipts B&O tax were required to apportion service business income using a two-factor apportionment formula that averages a service income factor and a payroll factor. Seattle adopted the two-factor apportionment in SMC 5.48.081(F). The service income factor and payroll factors are reflected as a fraction. The fractions are added together and then divided by two. The resulting number is then multiplied by the taxpayer's total taxable income, without regard to its source, to derive the amount of income that can be allocated to the taxpayer's Seattle activities. SMC 5.48.081.

The parties do not dispute the method KMS used to calculate its service factor. The only dispute is the calculation of the payroll factor. Under the Seattle Municipal Code, the payroll factor is described as:

> 1. The payroll factor is a fraction, the numerator of which is the total amount paid for compensation in the city during the tax period by the taxpayer and the denominator of which is the total compensation paid everywhere during the tax period. Compensation is paid in the city if:
>
> a. The individual or employee is primarily assigned within the city;
>
> b. The individual is not primarily assigned to any place of business for the tax period and the employee performs fifty percent (50%) or more of his or her service for the tax period in the city; or
>
> c. The individual is not primarily assigned to any place of business for the tax period, the individual does not perform fifty percent (50%) or more of his or her service in any city, and the employee resides in the city.

SMC 5.45.081(F)(1).

C. 2016 Audit

During the January 2012 through March 2016 audit period, KMS included the compensation it paid to its registered representatives when calculating the payroll factor. Because most of the compensation paid by KMS is in the form of commissions paid to its registered representatives, and most of the registered representatives work

6

outside the City, the payroll factor calculated by KMS was between 14% and 20%. After averaging this payroll factor with the undisputed service income factor, KMA calculated, reported, and paid $187,998.34 in Seattle B&O tax during the audit period.

During the audit, the City took the position that compensation paid to registered representatives should be excluded from both the numerator and denominator in calculating the payroll factor. According to the City, compensation paid to KMS's registered representatives should have been excluded because they were not "employees." Because nearly all of KMS's W-2 employees work in Seattle, exclusion of the commissions paid to the registered representatives increased the payroll factor by almost 100%. By excluding compensation paid to the registered representatives, the average of KMS's service income and payroll factors roughly tripled, thereby tripling the amount of tax calculated due.

As a result of the audit, the City assessed KMS with additional $460,972 of B&O tax, $20,501.78 of interest, and $23,048.64 in penalties, for a total of $504,532.22.

KMS timely paid the additional assessment and then filed a complaint for a refund of taxes paid in the King County Superior Court. Both parties moved for summary judgment. KMS argued that all registered representatives of broker-dealer are deemed to be employees for securities law purposes because of the broker-dealer's control and supervisory obligations. The City argued that the registered representative are independent contractors, not employees, and therefore are not supposed to be counted in the payroll factor.

The superior court granted the City's motion for summary judgment and denied KMS's motion for summary judgment. KMS appeals.

II.

Because this case was resolved below on cross-motions for summary judgment, our review is de novo. Cmty. Telecable of Seattle, Inc. v. City of Seattle, Dep't of Executive Admin, 164 Wn.2d 35, 41, 186 P.3d 1032 (2008). "Likewise, the proper construction of a city taxation ordinance is a legal question that is reviewed de novo on appeal, but the 'burden is on the taxpayer to prove that a tax paid by him or her is incorrect.'" Avanade, Inc. v. City of Seattle, 151 Wn. App. 290, 297, 211 P.3d 476 (2009) (quoting Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't, 160 Wn.2d 32, 41, 156 P.3d 185 (2007)). The reviewing court "gives considerable deference to the construction of" the challenged ordinance "by those officials charged with its enforcement." Ford Motor Co., 160 Wn.2d at 42 (citing Gen. Motors Corp. v. City of Seattle, 107 Wn. App. 42, 57, 25 P.3d 1022 (2001)).

A.

As we explained in KMS I: "Federal and state constitutional law limit a jurisdiction's power to tax activities occurring outside its boundaries. Because KMS's registered representatives operated in Seattle, in other Washington state locations, and in locations outside Washington state, the City's tax must meet both state and federal constitutional requirements." KMS I, 135 Wn. App. at 503.

"The federal constitution's commerce clause—preserving to Congress the authority to regulate interstate commerce—may, by negative implication, render a local tax regulation unconstitutional if the regulation has the effect of burdening interstate commerce with the risk of multiple taxation." Avanade, 151 Wn. App. at 301. To determine whether a tax violates the commerce clause, the United States Supreme

8

Court has set out a four-factor test. "First, the tax must apply to an activity with 'substantial nexus' to the taxing state. Second, it must be 'fairly apportioned.' Third, it must not discriminate against interstate commerce. And fourth, it must be fairly related to services or benefits provided by the state." KMS I, 135 Wn. App. at 504 (citing Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977)).

The second factor, fair apportionment, is at issue here. "A gross receipts tax is 'simply a variety of tax on income, which [is] required to be apportioned to reflect the location of the various interstate activities by which it was earned.'" KMS I, 135 Wn. App. at 504 (quoting Ok. Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 190, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995). As we explained in KMS I:

> The Constitution does not require a single apportionment formula. Rather, "a tax is fairly apportioned [if] it is internally and externally consistent." Goldberg, 488 U.S. at 261. Internal consistency requires a tax to be "structured so that if every State were to impose an identical tax, no multiple taxation would result." Goldberg, 488 U.S. at 261. "The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed."

KMS I, 135 Wn. App. at 504 (quoting Goldberg v. Sweet, 488 U.S. 252, 261-62, 109 S. Ct. 582, 102 L. Ed. 2d 607 (1989)). The tax must actually reflect a reasonable sense of how income is generated. KMS I, 135 Wn. App. at 505.

In KMS I, we reviewed a similar effort by the City to impose a B&O tax on KMS. At that point in time, KMS had approximately 300 registered representatives working in approximately 210 business locations in nine western states, including Washington. KMS I, 135 Wn. App. at 494. During the period January 1999 through March 2003, the City assessed the B&O tax on all commissions received in the KMS Seattle office, no

matter where the registered representative who generated the commission was based. The City maintained that because the Seattle office was KMS's sole office, KMS was not entitled to apportionment under the City's tax code. KMS I, 135 Wn. App. at 494.

We held that "attributing the entire proceeds of KMS's registered representatives to KMS's Seattle office because that is KMS's sole office violates the external consistency requirement of federal commerce clause jurisprudence." KMS I, 135 Wn. App. at 509. Adopting the rationale of a Pennsylvania court, we reasoned that this was so because taxing the entire gross proceeds of an out-of-city transaction, based solely on the fact that the transaction occurred in a state in which the taxpayer did not have an office, resulted in a tax that "was 'out of all appropriate proportion to' and had no 'rational relationship' with" the taxpayer's business activities within Seattle. KMS I, 135 Wn. App. at 506-08 (quoting Northwood Constr. Co. v. Twp. of Upper Moreland, 579 Pa. 463, 486, 856 A.2d 789 (2004)).

Similar to federal law, Washington imposes a three-part test on a city's power to tax: (1) the relevant taxable event must be identified; (2) the taxable event must occur within the municipality's territorial limits; and (3) there must be a minimum connection between the municipality and the transaction it seeks to tax. KMS I, 135 Wn. App. at 510 (citing Dravo Corp. v. City of Tacoma, 80 Wn.2d 590, 594-95, 496 P.2d 504 (1972)).

With respect to the application of state law to the City's imposition of its B&O tax on KMS based solely on its office being in Seattle, in KMS I, we concluded:

> that the City cannot tax income generated by securities transactions within Washington state but outside Seattle city limits when the incident of taxation is the privilege of doing business in the City. Whether or not KMS maintains an "office" as defined by the City's tax ordinance is not a

10

determining factor in the state law test of the limits of a municipality's taxing power. The City must fairly apportion KMS's gross receipts based on where the income-generating activity occurred. The assessment did not fairly apportion KMS's gross receipts.

KMS I, 135 Wn. App. at 512.

B.

KMS first argues that the City's B&O tax is unconstitutional as applied because it was not fairly apportioned. This is so, KMS contends, because the City ignored that most of KMS's taxable income is generated by registered representatives that work out of the city and state. We agree.

An "as applied" constitutional challenge to statute is "characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional." City of Redmond v. Moore, 151 Wn.2d 664, 668-69, 91 P.3d 875 (2004). This does not totally invalidate that statute, only its future application in a similar context. Id.

A tax assessed on gross income, such as the City's B&O tax, must be fairly apportioned to reflect "the location of the various interstate activities by which it was earned." KMS I, 135 Wn. App. at 504. In order to insure compliance with this mandate, in 2008 (after KMS I), the legislature enacted RCW 35.102.130, requiring all Washington cities with a B&O tax to use a two-factor apportionment formula based on service income and payroll. Wedbush Sec., Inc. v. City of Seattle, 189 Wn. App. 360, 364, 358 P.3d 422 (2015). The City incorporated the requirements of RCW 35.102.130 in SMC 5.45.081. Wedbush, 189 Wn. App. at 364, n.3. Under RCW 35.102.130(3)(a) and SMC 5.45.081(F)(1), the payroll factor takes into account the location of the of the employees and individuals that generate the income.

11

The City's payroll factor does this by comparing the compensation paid to individuals and employees "in the city" to compensation paid to individuals "paid everywhere." SMC 5.45.081(F)(1). Compensation is defined to include "commissions . . . paid to individuals for personal services that are or would be included in the individual's gross income under the federal Internal Revenue Code." SMC 5.45.081(G)(2). In reporting its B&O tax liability, KMS included the commissions paid to its registered representatives in the payroll factor because most of KMS's taxable income was generated through the sale of securities and services by the registered representatives.[3]

The City's argument that compensation paid to KMS's registered representatives must be excluded from the payroll factor because they are classified as independent contractors instead of employees necessarily fails. Whether a taxpayer does business through independent contractors or employees is "without constitutional significance." Scripto Inc. v Carson, 362 U.S. 207, 211-12, 80 S. Ct. 619, 4 L. Ed. 2d 660 (1960). Moreover, the point of fair apportionment is to ensure that a city only taxes income attributable and proportional to a taxpayer's income-generating activity in the city. KMS I, 135 Wn. App. at 506-09, 512; Avanade, 151 Wn. App. at 304. It does not matter whether income is generated by independent contractors or employees working outside the city. Either way, they are not working in the city; the city has no claim to a "fair share" of the income they generate.

---

[3] It is undisputed that KMS's registered representatives must report commissions as gross income in their individual federal tax returns. See Watson v. Commissioner, T.C. Memo. 2007-146 (U.S. Tax Ct. 2007), aff'd, 277 Fed. App'x 450 (5th Cir. 2008).

While the law has changed, the City's argument here suffers the same defect it did in KMS I. The City again ignores where KMS's registered agents work and generate income in calculating the payroll factor. In calculating the payroll factor Seattle allocates more than 95% of KMS's compensation to the city because this is where KMS's W-2 employees work. In essence, the City attributes most of KMS's income to the work of approximately 50 employees based in the city when it is undisputed that the bulk of KMS's income comes from the work of the 300-plus registered representatives based outside the city.

Because the City failed to consider where and how KMS generated its income, the tax is not externally consistent as applied to KMS. Therefore, the B&O tax is not fairly apportioned to KMS. Because the tax is not fairly apportioned, it is unconstitutional as applied to KMS.

C.

As a matter of constitutional avoidance, if a statute is susceptible to more than one interpretation, courts should construe it "to avoid constitutional doubt." Utter v. Bldg. Indus. Ass'n of Wash., 182 Wn.2d 398, 434-35, 341 P.3d 953 (2015). KMS argues that the Seattle Municipal Code provides a safety net: that if the allocation and apportionment provisions of the B&O tax do not fairly represent the extent of the taxpayer's business activity, the City may employ another method to allocate the taxpayer's income and thereby avoid a constitutional violation. We agree.

In RCW 35.102.130, the Legislature specifically provided at catchall to the apportionment formula. When Seattle adopted the RCW in SMC 5.45.08, it also adopted this relevant portion:

13

If the allocation and apportionment provisions of this subsection do not fairly represent the extent of the taxpayer's business activity in the city or cities in which the taxpayer does business, the taxpayer may petition for or the tax administrators may jointly require, in respect to all or any part of the taxpayer's business activity, that one of the following methods be used jointly by the cities to allocate or apportion gross income, if reasonable:

(i) Separate accounting;

(ii) The use of a single factor;

(iii) The inclusion of one or more additional factors that will fairly represent the taxpayer's business activity in the city; or

(iv) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

RCW 35.102.130(3)(c); SMC 5.45.081(F)(3).

Here, when KMS challenged the City's tax apportionment, KMS argued that "Seattle's B&O tax can be fairly apportioned by including compensation paid to KMS's registered representatives in calculating the compensation factor of Seattle's apportionment formula, as KMS did when preparing and filing its Seattle taxes."[4]

KMS has provided for an additional method by which the City could have apportioned the tax so that the tax would fairly represent KMS's activity in the city. As discussed above, the City's application was not fairly apportioned to KMS and did not fairly represent how KMS conducts its business in Seattle. The catchall created by the Legislature gives the City authority to use a different method to apportion the tax without adhering to the two-factor formula in a way that is fair. Because the Legislature provided a catchall in the RCW, the City should have employed a different method to reach a fairly apportioned tax.

---

[4] The City does not claim that KMS did not challenge the apportionment and provide an additional method of calculating the B&O tax.

14

D.

KMS argues that a plain language reading of SMC allows for the City to consider the registered representatives as employees for an alternative apportionment calculation. We agree.

The relevant definition of the code are:

3. "Individual" means any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee of that taxpayer.

SMC 5.45.081(G).

The common law "right to control" test for determining whether a worker is an employee or an independent contractor is derived from the common law of torts. Anfinson v. FedEx Ground Package Sys., Inc., 159 Wn. App. 35, 53, 244 P.3d 32, 41 (2010), aff'd, 174 Wn.2d 851, 281 P.3d 289 (2012). The right to control another's conduct is often the most decisive factor in determining if an agency relationship exists. Massey v. Tube Art Display, Inc., 15 Wn. App. 782, 787, 551 P.2d 1387 (1976). For tort purposes, the principle does not need to show complete control, rather, substantial evidence of control is sufficient. Massey, 15 Wn. App. at 787.[5]

Here, it is undisputed that both the SEC and FINRA consider a broker-dealer's registered representatives to be its employees because they are, by law, subject to the broker-dealer's control—even if they are classified as independent contractors.

Additionally, KMS's registered representatives fall within the definition of individual under SMC 5.45.081(G). An individual is considered an employee under the

---

[5] The City cites to Seattle Rule 5-039, which distinguishes employees from persons engaging in business. The rule provides a list of factors to determine if a person is an employee. The rule also states that "while no one factor definitely determines employee status, the most important consideration is the employers right to control the employee."

common law rules if the employer exercises control over the individual. Under federal law, "as a broker-dealer, KMS must supervise its registered representatives, oversee their licensing status, and require them to comply with industry rules and standards of conduct and procedures set out in its policy manual." Therefore, the City could logically consider the registered representatives to be employees for an alternative apportionment calculation of the B&O tax.

We conclude that the City's interpretation of its payroll factor as applied to KMS fails to fairly apportion the City's B&O tax and is unconstitutional as applied to KMS. The constitutional defect can be avoided, however, by applying the interpretation offered by KMS and including its registered representatives in the payroll factor for calculating its B&O obligation.

We vacate the order granting summary judgment to the City and remand with instruction for the trial court to grant KMS's motion for summary judgment.

_Mann, ACJ_

WE CONCUR:

_Leach, J._          _Dwyer, J._

16