## NOTICE: SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| SOUND INPATIENT PHYSICIANS, INC., a Delaware Corporation, | No.  55391-1-II |
| Appellant, | |
| v. | |
| CITY OF TACOMA, a Washington Municipal Corporation, through its Finance Department, Tax & License Division, and CITY OF TACOMA OFFICE OF THE HEARING EXAMINER, | PUBLISHED OPINION |
| Respondent. | |

PRICE, J. — The city of Tacoma (City) appeals the superior court's order reversing the city of Tacoma's hearing examiner's order that denied Sound Inpatient Physicians, Inc.'s (SIP) request for a refund for alleged overpaid business and occupation (B&O) taxes.  As the party bearing the burden of proving that the tax assessment was improper, SIP argues that the City misinterpreted the applicable statutory language and erroneously apportioned the amount of SIP's service income to the City.  And SIP argues that if the City's interpretation of the applicable statute is correct, then the statute violates the federal commerce clause. [1]  We reverse the superior court's order in favor of SIP and affirm the hearing examiner.

---

[1] U.S. CONST. art. I, § 8, cl. 3.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55391-1-II

FACTS

SIP is a company providing management and administrative services to medical professionals. These services are performed in Tacoma and other locations across the country. SIP has three major offices in Tacoma, Tennessee, and Texas. SIP has 14 other regional offices and many employees work from home.

In 2019, the City's finance department completed an audit of SIP's B&O taxes for 2013-2017. The audit was performed to determine whether SIP correctly apportioned the taxes on its gross receipts. Tax apportionment was determined based on a payroll factor and a service income factor. The City agreed with SIP's method for calculating the payroll factor.

However, the City rejected SIP's calculation of the service income factor. SIP calculated the service income factor based exclusively on customer contacts that occurred within the city—which were nearly zero. The City, on the other hand, determined that because the majority of SIP's business services (coding, billing, collections, claims, record-keeping, etc.) did not require any direct customer contact, apportionment based on customer contacts did not reflect a fair apportionment of service income. Therefore, the City determined that the service income factor should be determined using the costs of performance.

The City used four factors to calculate the costs of performance: "1) direct labor costs, 2) facility lease expense, 3) facility other expense, and 4) depreciation." Clerk's Papers (CP) at 61. Using these factors, the City determined that "the majority of expenses that are trackable by a location[] occur in Tacoma, and therefore all revenue is to be allocated to Tacoma because every expense item . . . used for the [cost of performance] calculation has a higher expense percentage in Tacoma compared to any other single location of SIP." CP at 61 (emphasis omitted). The City

2

No. 55391-1-II

also noted that only 5 of the 50 states have gross receipts taxes and, therefore, SIP's Texas and Tennessee offices have not paid any gross receipts taxes.

Based on the audit, the City assessed an additional $134,096 in B&O taxes against SIP. SIP appealed the City's decision to the hearing examiner arguing that the City's tax assessment incorrectly determined the service income factor. SIP sought a refund of $805,022 for taxes it believed it overpaid based on its calculation of the service income factor. The parties filed cross-motions for summary judgment. The hearing examiner granted the City's motion for summary judgment and denied SIP's request for a refund.

SIP filed a writ of review to appeal the matter to superior court. The superior court reversed the hearing examiner's order on the parties' cross-motions for summary judgment and granted SIP's request for a refund.

The City appeals the superior court's order.

ANALYSIS

SIP successfully argued to the superior court that the hearing examiner erred by granting the City's motion for summary judgment and summary judgment should, instead, be entered in its favor. On appeal, SIP renews its argument that statutory construction does not support the City's calculation of its tax burden. Further, SIP renews its argument that the City's calculation of its tax burden is unconstitutional because it violates the federal commerce clause. We disagree with SIP.

I. LEGAL PRINCIPLES

Because this case was resolved on cross-motions for summary judgment, we review the superior court's decision reversing the hearing examiner de novo. *City of Seattle v. KMS Fin. Services, Inc.*, 12 Wn. App. 2d 491, 501, 459 P.3d 359 (2020). The taxpayer bears the burden of

3

No. 55391-1-II

proving that a tax paid is incorrect. RCW 34.05.570(a); *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007). " '[T]axes are presumed to be just and legal, and the burden rests upon one assailing the tax to show its invalidity.' " *Id.* (quoting 72 AM. JUR. 2D *State and Local Taxation* § 1000 (2006)).

Statutory construction is an issue of law that we review de novo.[2] *Id.* Our goal is to give effect to the legislature's purpose and intent. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). "Where a statute is clear on its face, its plain meaning should 'be derived from the language of the statute alone.' " *Ford Motor Co.*, 160 Wn.2d at 41 (quoting *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002)). If the plain language of the statute is unambiguous, we do not resort to canons of judicial constructions. *Jamestsky*, 179 Wn.2d at 762. A statute is only ambiguous if it is subject to more than one reasonable interpretation. *Id.*

In construing a statute, we avoid interpretations that render portions of a statute meaningless or superfluous. *Ford Motor Co.*, 160 Wn.2d at 41. We must also avoid constructions that yield unlikely, absurd, or strained consequences. *Thurston County ex rel. Snaza v. City of Olympia*, 193 Wn.2d 102, 108, 440 P.3d 988 (2019). "However, when construing an ordinance, a 'reviewing court gives considerable deference to the construction of' the challenged ordinance 'by those officials charged with its enforcement.' " *Ford Motor Co.*, 160 Wn.2d at 42 (quoting *Gen. Motors Corp. v. City of Seattle*, 107 Wn. App. 42, 57, 25 P.3d 1022 (2001)).

---

[2] The City ordinance that governed the allocation at issue here is former Tacoma Municipal Code (TMC) 6A.30.077(F) (2018). The language of TMC 6A.30.077(F) is the same as former RCW 35.102.130(3) (2017). And municipal ordinances are construed according to the rules of statutory construction. *Ford Motor Co.*, 160 Wn.2d at 41. Accordingly, we interpret the language of former RCW 35.102.130(3).

4

No. 55391-1-II

We also review constitutional issues de novo. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 689-90, 451 P.3d 694 (2019). "[T]he burden to show unconstitutionality is on the challenger." *Id.*

II. STATUTORY CONSTRUCTION

SIP argues that the City has improperly interpreted how to calculate its tax liability under former RCW 35.102.130(3)(b) (2017).[3] Specifically, SIP argues that Division One's opinion in *Wedbush*[4] requires the statute be interpreted as "cascading hierarchy" and, because SIP had negligible customer locations within the city, essentially no tax liability for service income can be apportioned to SIP under the statute. Br. of Resp't at 14 (boldface omitted). Alternatively, SIP argues that even if the statute's alternatives are not "cascading," the City still improperly applied the statute to SIP because it is taxable at the customer locations. We disagree with SIP's arguments and hold that the City properly interpreted the statutory language.

B&O taxes are assessed for the privilege of conducting business in a taxing jurisdiction. *Ford Motor Co.,* 160 Wn.2d at 44. Apportionment of B&O taxes is determined under former RCW 35.102.130. When business is conducted in various locations, income must be apportioned to reflect the location in which it is earned. *KMS*, 12 Wn. App. 2d at 502. "The tax must actually reflect a reasonable sense of how income is generated." *Id.* at 502-03.

---

[3] The parties agree that the 2017 version of RCW 35.102.130 applies to this case. The 2017 version RCW 35.102.130 was amended to change the way service income is apportioned. LAWS OF 2019, ch. 101, § 1.

[4] *Wedbush Sec., Inc. v. City of Seattle*, 189 Wn. App. 360, 358 P.3d 422 (2015).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55391-1-II

Gross income from services is taxed by the City based on "multiplying apportionable income by a fraction, the numerator of which is the payroll factor plus the service-income factor and the denominator of which is two." Former RCW 35.102.130(3). The parties dispute only the calculation of the service income factor.

The service income factor reflects the proportion of service income earned in the city as compared with other locations. Former RCW 35.102.130(3)(b). The statute defines the service income factor as follows:

> The service income factor is a fraction, the numerator of which is the total service income of the taxpayer in the city during the tax period, and the denominator of which is the total service income of the taxpayer everywhere during the tax period.

Former RCW 35.102.130(3)(b).

Subsection (3)(b)(i) provides that service income is in the city if "[t]he customer location is in the city[.]" Under subsection (b)(ii) service income is in the city if "[t]he income-producing activity is performed in more than one location and a greater proportion of the service-income-producing activity is performed in the city than in any other location, based on costs of performance, and the taxpayer is not taxable at the customer location[.]" And subsection (b)(iii) provides service income is in the city if "[t]he service-income-producing activity is performed within the city, and the taxpayer is not taxable in the customer location." The subsections of former RCW 35.102.130(3)(b) are separated by the disjunctive "or."

"Customer location" means "the city or unincorporated area of a county where the majority of the contacts between the taxpayer and the customer take place." Former RCW 35.102.130(4)(d). "Taxable in the customer location" means "either that a taxpayer is subject to a gross receipts tax in the customer location for the privilege of doing business, or that the

6

No. 55391-1-II

government where the customer is located has the authority to subject the taxpayer to gross receipts tax regardless of whether, in fact, the government does so." Former RCW 35.102.130(4)(h).

A. DETERMINING WHICH PROVISION OF FORMER RCW 35.102.130(3)(b) APPLIES

SIP argues that former RCW 35.102.130(3)(b) must be read as a cascading hierarchy of apportionment methods and does not allow the City to choose which provision of former RCW 35.102.130(3)(b) should be used to determine the amount of apportioned service income. SIP asserts that as a cascading hierarchy, the City may apply subsection (b)(ii) or subsection (b)(iii) only if subsection (b)(i) does not apply. SIP argues that because it has customer contacts, it can establish customer locations. And because those customer locations are outside of the city, subsection (b)(i) applies and its service income cannot be apportioned to the City. We disagree.

First, SIP's cascading hierarchy argument makes the relevant factual question whether SIP can establish any customer location, either inside or outside the city, through any physical contact with customers. If so, under SIP's reading of the statute, the City may only apportion service income based on subsection (b)(i). This interpretation is not consistent with the plain language of the statute, renders portions of the statute meaningless, and leads to an absurd result.

The plain language of former RCW 35.102.130(3)(b) simply does not support SIP's interpretation as a cascading hierarchy. Instead, former RCW 35.102.130(3)(b) should be read to provide three alternative methods of apportioning, allowing the taxing authority to select the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55391-1-II

method that most fairly and accurately apportions income.[5] Contrary to SIP's assertion, subsection (b)(i) does not prohibit apportionment when a customer location is outside the city, it is silent on what happens if the customer location is not in the city. In fact, there is no language in former RCW 35.102.130(3)(b) that requires the provisions to be applied in any specific manner.

And SIP's construction of this subsection is not a reasonable interpretation of the statute's plain language. Using cost of performance to determine apportioned service income specifically *because* customer locations are outside the city allows the City to fairly apportion income that is generated by services performed in the city for customers outside the city. Accordingly, the plain language of subsection (b)(i) does not support SIP's interpretation that when a business has physical contacts with customers—establishing customer locations—service income can only be apportioned based on customer locations within the city. Interpreting subsection (b)(i) to prohibit any apportionment of service income when customer locations are identified outside of the city is not consistent with the legislature's intent to fairly apportion service income generated in the city.

In addition, the plain language of subsection (b)(ii) and subsection (b)(iii) contain language that specifically accounts for the customer location being outside of the city. Both provisions only apply if "the taxpayer is not taxable [at/in] the customer location." Accordingly, SIP's position that subsection (b)(ii) and subsection (b)(iii) can only apply when there is no customer location is

---

[5] This interpretation is consistent with the City's interpretation of the statute. The City argues that the legislature has provided a list of alternatives that must be used "to determine which specific provision fairly fits a given situation." Appellant's Opening Br. at 18. And the City asserts that the provisions of the statute "ensure a balanced and fair approach by requiring that tax administrators and taxpayers review every provision to determine which provision fairly apportions the taxpayer's service income." Appellant's Opening Br. at 20. The City does not argue for an unqualified or arbitrary discretion to choose whichever method it wants to apply.

8

No. 55391-1-II

inconsistent with the statutory language. The plain language of the two subsections establishes a basis for the factor even when there is a customer location and that customer location is outside of the city. Therefore, interpreting former RCW 35.102.130(3)(b) to provide equal alternatives that must be selected based on which alternative provides the most fair apportionment of service income is the most reasonable and most accurately effectuates the legislature's intent to fairly apportion income.

Further, if we accepted SIP's interpretation, then subsection (b)(ii) and subsection (b)(iii) would only apply if there was no identifiable customer location. But in that case, there would be no customer location at all so the language "not taxable at the customer location" could not apply. SIP's interpretation would render this language superfluous or meaningless, and we avoid such interpretations.

Finally, SIP's interpretation creates an absurd result that does not account for the reality that businesses can generate service income through a variety of methods. SIP does have some contact with customers but as the City identified, SIP's service income is primarily derived from services that do not require physical contact with customers. SIP's service income is derived from services performed at its office without any physical contact with customers. The purpose of tax apportionment is to fairly identify and apportion the amount of income that is generated within the city. *KMS*, 12 Wn. App. 2d at 502-03. Allowing a business to avoid apportioning any service income to a city simply because it can establish that it has made some physical contacts with customers, even if those contacts are incidental to the bulk of the service income generating activity, is absurd and could not have been what the legislature intended when it designed this scheme to fairly apportion service income.

9

No. 55391-1-II

Despite this reasonable interpretation of former RCW 35.102.130(3)(b), SIP relies extensively on Division One's opinion in *Wedbush*, to argue that the statute dictates a strict cascading hierarchy. Decisions of other divisions are persuasive authority and are not binding. *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 150-52, 154, 410 P.3d 1133 (2018). In *Wedbush*, the court stated:

> RCW 35.102.130 has cascading clauses to determine whether the service income is in the city. The first clause to determine service income (i) provides contacts as the determining factor of income. If there are no contacts, then clauses (ii) or (iii) come into play.

189 Wn. App. at 365. Our opinion is not inconsistent with Division One's holding. Although Division One stated that the other clauses apply if there are no contacts, Division One was addressing a situation in which the "majority of contact with customers occurs through the telephone and the Internet." *Id*. at 362. That case was primarily addressing whether customer locations were determined by physical contacts or any contacts. *Id*. at 364-65. Because the court was not addressing whether isolated physical contacts prevented the City from being able to apportion service income in the city, the opinion has limited persuasive value on the issues being decided here.

We interpret former RCW 35.102.130(3)(b) as a set of equal alternatives that the legislature intended should be selected based on which alternative most fairly apportions service income. The City's audit was consistent with this interpretation when it considered the different alternative methods in former RCW 35.102.130(3)(b) and chose the method that most fairly apportioned SIP's service income to the City.

10

No. 55391-1-II

B. INTERPRETATION OF "TAXABLE AT THE CUSTOMER LOCATION" LANGUAGE

SIP also argues that even if subsection (3)(b)(ii) applies, the language regarding "not taxable at the customer location" should be interpreted to mean the customer location has the *constitutional* authority to tax rather than the *legislative* authority to tax. SIP argues that because all of the locations where it operates have the constitutional authority to impose a gross receipts tax, SIP is "taxable" at the customer locations and, therefore, service income cannot be apportioned to the City. We disagree.

The statute defines "taxable in the customer location" as "either that a taxpayer is subject to a gross receipts tax in the customer location for the privilege of doing business, or that the government where the customer is located has the authority to subject the taxpayer to gross receipts tax regardless of whether, in fact, the government does so." Former RCW 35.102.130(4)(h).

Here, relying on only constitutional authority to tax, as urged by SIP, renders the provision meaningless. If "authority" meant constitutional authority, the "not taxable" clauses in subsection (b)(ii) and subsection (b)(iii) would be meaningless because every taxing jurisdiction in the country has the constitutional authority to tax gross receipts. Instead, we interpret the language in subsection (b)(ii) and subsection (b)(iii) to mean that the applicable legislature must have explicitly authorized imposition of a gross receipts tax.

The City properly interpreted subsection (b)(ii) to mean there must be an explicitly authorized gross receipt tax at the customer location. Therefore, the hearing examiner properly granted summary judgment in favor of the City and the superior court erred by reversing the hearing examiner's order.

11

No. 55391-1-II

III. CONSTITUTIONALITY

Finally, SIP argues that the City's application of former RCW 35.102.130(3)(b) violates the federal commerce clause because the tax was not fairly apportioned. Under the commerce clause a tax on interstate commerce is constitutionally permissible if: (1) the taxpayer has a substantial nexus with the taxing jurisdiction, (2) the tax does not discriminate against interstate commerce, (3) the tax is fairly apportioned, and (4) there is a reasonable relationship between the tax imposed upon the taxpayer and the services provided by the taxing jurisdiction. *KMS*, 135 Wn. App. at 504. A tax is fairly apportioned if it is internally and externally consistent. *Id.*

A. INTERNAL CONSISTENCY

SIP argues that the City's apportionment of its tax liability is not internally consistent. We disagree.

"Internal consistency requires a tax to be 'structured so that if every State were to impose an identical tax, no multiple taxation would result.' " *KMS*, 135 Wn. App. at 504 (quoting *Goldberg v. Sweet,* 488 U.S. 252, 261, 109 S. Ct. 582, 102 L. Ed. 2d 607 (1989)).

Here, the City's tax apportionment would not result in multiple taxation because the cost of performance apportionment can only be used if the business is not taxable at the customer location. Assuming every state imposed such a scheme, no business could be subject to multiple taxation because the "not taxable at the customer location" language ensures that the business is only subject to a single gross receipts tax. Because the City's tax apportionment ensures that the business is only taxed in one location, no multiple taxation can result, making it internally consistent.

12

No. 55391-1-II

B. EXTERNAL CONSISTENCY

SIP also argues that the costs of performance method as applied is not externally consistent. We disagree.

External consistency requires that " 'the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated.' " *Id.* at 505 (quoting *Container Corp. of Am. v. Cal. Franchise Tax Bd.*, 463 U.S. 159, 169, 103 S. Ct. 2933, 77 L. Ed. 2d 545 (1983)).

Here, the City used four factors to determine SIP's cost of performance: 1) direct labor costs, 2) facility lease expense, 3) facility other expense, and 4) depreciation. These four factors reflect a reasonable sense of how SIP's income is generated because it is reasonable to determine that the cost of performance is directly correlated with the amount of income generated by a company. And labor costs combined with expenses is a reasonable method of calculating cost of performance. Therefore, the City's cost of performance factors reflect a reasonable sense of how income is generated and the tax apportionment is externally consistent.[6]

The City's tax apportionment does not violate the commerce clause because it is both internally and externally consistent. Therefore, SIP's constitutional challenge to the City's tax apportionment fails.

---

[6] To the extent that SIP argues that the City's cost of performance factors are externally inconsistent as it is applied to their business, this argument fails. The City calculated the cost of performance based on information that SIP provided and reached its 100 percent determination primarily based on SIP's failure to track expenses by location. Because SIP has failed to produce evidence showing that its costs of performance and resulting income producing activity are performed in a greater proportion outside of the city, it cannot meet its burden to show that the city's tax apportionment is externally inconsistent as applied to its business.

13

No. 55391-1-II

CONCLUSION

We hold that former RCW 35.102.130(3)(b) provides equal alternatives for determining a taxpayer's service income factor that must be selected based on which alternative provides the most fair apportionment of service income and not rigidly as a cascading hierarchy. We further hold that "not taxable at the customer location" as used in former RCW 35.102.130(3)(b)(ii) refers to legislative authority, not constitutional authority. And finally, we hold that former RCW 35.102.130(3)(b) does not violate the federal commerce clause. Accordingly, we reverse the superior court's order in favor of SIP and affirm the hearing examiner.

PRICE, J.

We concur:

GLASGOW, C.J.

LEE, J.