IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TRACFONE, INC., | No. 85094-6-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| CITY OF RENTON, | |
| Respondent. | |

DÍAZ, J. — TracFone Wireless, Inc. ("TracFone") sells pre-paid airtime purchased from third-party cellular networks to individual customers and retailers. TracFone appeals the trial court's order of summary judgment affirming an administrative decision that its business is subject to the City of Renton's ("Renton") municipal utility tax. TracFone argues it was error (1) to consider declarations from two Renton witnesses, (2) to hold TracFone was a "telephone business" under RCW 35A.82.060, and (3) to hold TracFone's wholesale sales were not subject to the "resale" tax exemption within RCW 35A.82.060(1). Finding no reversible error, we affirm.

## I.     BACKGROUND

In TracFone's own words, it "buys wireless airtime from network carriers,

then resells this airtime on a prepaid basis at retail (to consumers) and at wholesale (to retailers and distributors[).]"   In a nutshell, it sells "prepaid wireless airtime" cards.

Starting in 2011, Renton hired Taxpayer Recovery Services ("TRS") to audit TracFone to determine its liability under Renton's municipal utility tax.  The audit period covered January 1, 2007 through October 31, 2017.  TRS completed the audit in 2017, but it recommended that Renton wait to issue its utility tax assessment until the outcome of a Missouri state court appeal in TracFone v. City of Springfield, 557 S.W.3d 439 (Mo. Ct. App. 2018).  Following the conclusion of City of Springfield in 2019, Renton assessed TracFone for utility tax on both its consumer and wholesale sales.

TracFone appealed the tax assessment to Renton's hearing examiner. Both TracFone and Renton moved for summary judgment.  The hearing examiner granted summary judgment for Renton and ruled that both TracFone's consumer and wholesale sales were properly subjected to Renton's utility tax.  The hearing examiner issued a final decision in May 2021.[1]

In June 2021, TracFone petitioned the King County Superior Court for a writ of review of the hearing examiner's decision.  In February 2023, the superior court affirmed the hearing examiner's decision to grant summary judgment.   TracFone now appeals.

---

[1] In July 2021, the hearing examiner issued a "Decision Upon Reconsideration" after TracFone's June 2021 petition for review and which addressed a narrow computational matter, noting "[a]ll other portions of the Final Decision remain as issued."  As that issue is not before us on appeal, we will discuss it no further.

## II. ANALYSIS

### A. Writs of Review and Motions for Summary Judgment

There are two classes of writs, constitutional and statutory. Dep't of Corr. v. Barnett, 24 Wn. App. 2d 961, 966, 522 P.3d 52 (2022). To obtain a statutory writ of review under RCW 7.16.040, "the petitioner must show (1) that an inferior tribunal (2) exercising judicial functions (3) exceeded its jurisdiction or acted illegally, and (4) there is no adequate remedy at law." Id. (quoting Wash. Pub. Emps. Ass'n v. Wash. Pers. Res. Bd., 91 Wn. App. 640, 646, 959 P.2d 143 (1998)). A litigant may show that the lower tribunal "acted illegally" by establishing prejudicial "errors of law." Wash. Pub. Emps. Ass'n, 91 Wn. App. at 653-54. Relief is not limited to "only acts that violated procedural requirements[.]" Id. Such an interpretation "would render the phrase ['acting illegally'] superfluous" as it would "merely describe the conduct already encompassed within the statutes' phrases 'exceeded jurisdiction' or 'erroneous or void proceeding.'" Id. (quoting RCW 7.16.040).

Under Renton's ordinance, the hearing examiner's decision is "subject to review by either party under the provision of RCW 7.16.040," i.e., the statutory writ of review process. Renton Municipal Code ("RMC") 5-26-19. Further, this court has consistently held that a writ of review is the proper means to appeal a municipal hearing examiner's determination on tax issues. Foss Maritime Co. v. City of Seattle, 107 Wn. App. 669, 672, 27 P.3d 1228 (2001); see Wedbush Secs., Inc. v. City of Seattle, 189 Wn. App. 360, 363-64, 358 P.3d 422 (2015); see also City of

3

Seattle v. T-Mobile W. Corp., 199 Wn. App. 79, 82, 397 P.3d 931 (2017). Thus, TracFone's petition for a statutory writ of review is properly before this court.

The parties' briefing, however, incorrectly frames their analysis as a review of the superior court. "On appeal of a writ of review, this court reviews the challenged administrative decision on the record of the administrative tribunal, not of the superior court operating in its appellate capacity."[2] Nichols v. Seattle Hous. Auth., 171 Wn. App. 897, 904, 288 P.3d 403 (2012).

As this is an appeal of the hearing examiner's order granting summary judgment, we review de novo whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

A "material fact" is one upon which the outcome of the litigation depends. Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling

_____

[2] TracFone acknowledged the correct subject of our review at oral argument. TracFone's counsel was asked whether "all your references to error by the superior court in your brief in that regard are erroneous?" Wash. Ct. of Appeals oral argument, TracFone Wireless v. City of Renton, No. 85094-6-I (January 24, 2024), at 2 min., 38 sec., through 2 min., 45 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024011544/?eventID=2024011544. TracFone's counsel responded that "technically this court's review is not a review of the superior court's decision, but a review of the hearing examiner's decision. I don't think that changes anything about the arguments that were made because both the hearing examiner and the superior court committed the same error." Wash. Ct. of Appeals oral argument, supra at 2 min., 55 sec. through 3 min., 13 sec. Thus, we will proceed with our analysis.

the outcome of the litigation." Ranger Ins. Co., 164 Wn.2d at 552. We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

Washington courts employ a two-step burden-shifting analysis for summary judgment motions. First, the "party moving for summary judgment bears the initial burden of showing that there is no disputed issue of material fact." Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022). Second, the "burden then shifts to the nonmoving party to present evidence that an issue of material fact remains." Id. Stated otherwise, summary judgment gauges whether the nonmoving party has met their "burden of production to create an issue" of material fact. Rice v. Offshore Systems, Inc., 167 Wn. App. 77, 89, 272 P.3d 865 (2012).

The "'function of a summary judgment proceeding, or a judgment on the pleadings is to determine whether or not a genuine issue of fact exists, not to determine issues of fact.'" Haley, 25 Wn. App. 2d at 217 (quoting State ex rel. Zempel v. Twitchell, 59 Wn.2d 419, 425, 367 P.2d 985 (1962)). As such, the reviewing body "may not weigh the evidence, assess credibility, consider the likelihood that the evidence will prove true, or otherwise resolve issues of material fact." If findings of fact are made, the reviewing body "must specify which facts exist without contention and which remain in controversy." Id. at 234 (citing CR 56(d)).

As a preliminary note, the hearing examiner in this matter appears to have made numerous improper factual findings in granting summary judgment. For

5

example, the hearing examiner appeared to weigh numerous factual "factors" between TracFone and Renton's respective positions on the RCW 35A.82.060(1) resale exemption. Even so, "[w]hen the trial court does make findings of fact without following the procedures dictated in CR 56(d), its findings are nullities." Id. at 235. Stated otherwise, because we review orders on summary judgment de novo, such "findings of fact are superfluous in summary judgment proceedings and carry no weight on appeal." Hamilton v. Huggins, 70 Wn. App. 842, 848, 855 P.2d 1216 (1993).

B.      The Use of Renton's Two Expert Declarations

We begin with the propriety of the evidence which was before the hearing examiner. TracFone argues the superior court[3] erred by basing its findings on legally deficient declarations of two of Renton's witnesses. TracFone alleges these two witnesses constituted the "near-exclusive basis" of the court's findings. We disagree.

The first witness, Garth Ashpaugh, has experience within the telecommunications industry but has not worked directly with TracFone and, thus according to TracFone, has no personal knowledge for his statements, in violation of ER 602. The second witness, Nate Malone, worked for Renton in various tax-related roles beginning in 2017 but did not work on TracFone's audit and, thus according to TracFone, his statements also lacked appropriate foundation. If true,

---

[3] As explained earlier, this appeal must focus on the decision of Renton's hearing examiner, not the superior court. Nichols v. Seattle Hous. Auth., 171 Wn. App. 897, 904, 288 P.3d 403 (2012) ("On appeal of a writ of review, this court reviews the challenged administrative decision on the record of the administrative tribunal, not of the superior court operating in its appellate capacity.").

reliance on these declarations normally may violate CR 56(e)'s requirement that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." This argument, however, is unpersuasive for two general reasons.

First, in proceedings before Renton's hearing examiner, "[t]echnical rules of evidence will not be applied." RMC 4-8-100(G)(3)(f)(ii).[4] Instead, "[t]he key requirements for evidence will be relevance and reliability. Relevant and reliable evidence will be admitted if it possesses probative value commonly accepted by reasonable persons in the conduct of their affairs." Id.; see, e.g., RCW 34.05.461(4) (laying out a similar standard in Administrative Procedure Act matters). And ultimately, the core obligation of the RMC hearing examiner is to ensure that "the appellant taxpayer and the Administrator shall have the opportunity to be heard and to introduce evidence relevant to the subject of the appeal." RMC 5-26-18(B)(4). In other words, there is a relaxed standard of admissibility of evidence before a hearing examiner, which counsels against reversing summary judgment on narrow "technical" grounds. The proper question before us is whether the hearing examiner allowed both sides "the opportunity to

_____

[4] RMC 4-8-100(G)(3) "appl[ies] to all hearings that are required by the Renton Municipal Code to be held before the Hearing Examiner and shall serve as guidance when the Hearing Examiner is given the duty to conduct hearings on other subjects." RMC 4-8-100(G)(3)(a). Further, "[i]n the event that there are any conflicts between these rules and the provisions of the Renton Municipal Code, state law or procedural due process, the provisions of the Renton Municipal Code or procedural due process shall prevail." Id. at (G)(3)(d). There is no challenge to these provisions.

7

be heard and to introduce evidence relevant to the subject of the appeal." RMC 5-26-18(B)(4). We hold the hearing examiner met both requirements, regardless of the technical admissibility of the declarations.

Second, under CR 56(h), an order granting or denying a summary judgment "shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered." Here, the hearing examiner's orders indicate they broadly relied on both Renton's and TracFone's briefing and attached exhibits, not just Ashpaugh or Malone's assertions. These exhibits, and thus the record before us, contain numerous primary source documents, including for example:

- TracFone's terms and conditions;

- a "Wireless Service Purchase Agreement" with T-Mobile;

- "Retail Distribution Agreement[s]" with Circle K and Safeway;

- a "PCS Services Agreement" with Sprint; and

- a document from TRS describing their audit methodology.

Consistent with this requirement, the hearing examiner indicated they reviewed, and we now review de novo, these primary source documents themselves without "exclusively" or "near-exclusively" relying on either of the challenged declarations. Where it is not a pure question of law, the pertinent standard, as will be discussed in the following sections, is whether Renton had sufficient unchallenged, admissible evidence to meet its initial burden on summary judgment, thus shifting the burden to TracFone to identify a genuine issue of material fact.

As such, we hold that the hearing examiner did not err in admitting and considering, to the extent it did, either witness' testimony under the applicable administrative standard. And, as will be seen, our de novo review does not depend on those declarations, regardless of their admissibility.

C. Whether TracFone is a "Telephone Business" as a Matter of Law

TracFone asserts it is not a "telephone business" for tax purposes under RCW 35A.82.060 and, thus, may not be taxed under the RMC. We disagree.

Statutory interpretation is a question of law reviewed de novo. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The fundamental objective of statutory interpretation "is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Id. at 9-10. In examining a statute's plain meaning, courts "consider the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." Lenander v. Dep't of Ret. Sys., 186 Wn.2d 393, 405, 377 P.3d 199 (2016). "If, after this inquiry, the statute remains ambiguous or unclear, it is appropriate to resort to aids of construction and legislative history." Id.

"A municipal corporation's authority to tax must be delegated by the state legislature." Vonage Am., Inc. v. City of Seattle, 152 Wn. App. 12, 20, 216 P.3d 1029 (2009). In RCW 35A.82.060(1), the legislature delegated to code cities the authority to "impose[] a license fee or tax upon the business activity of engaging in the *telephone business*[.]" RCW 35A.82.060(1) (emphasis added).

RCW 35A.82.060(3) provides that "the definitions in RCW . . . 82.16.010 apply to this section."  RCW 82.16.010 defines "[t]elephone business" as "the business of providing *network telephone service*."  RCW 82.16.010(7)(b)(iii) (emphasis added).  In turn, the statute defines "network telephone service" in part as "the providing by any person of *access* to a telephone network . . . [.]"  RCW 82.16.010(7)(b)(ii) (emphasis added).  In other words, a "telephone business," in pertinent part, is one that provides "access" to a telephone network.

Pursuant to RCW 35A.82.060, the RMC created a "Telephone Utility Tax."  Former RMC 5-11-1(A) (2019).[5]  "This utility tax [is] for the privilege of conducting a telephone business within the City limits [and] shall be six percent (6%)."  Id. at Former 5-11-1(A)(1).  Similar to RCW 82.16 discussed above, Renton defines "telephone business" as "providing by any person of *access* to the local telephone network[.]"  Id. at Former 5-11-3(O) (2019) (emphasis added).[6]

The second clause of RCW 35A.82.060(1), however, also contains an exception to this taxing authority, mandating that a "city shall not impose the fee or tax on that portion of network telephone service which represents charges to *another telecommunications company* as defined in RCW 80.04.010[.]"  RCW 35A.82.060(1) (emphasis added).  RCW 80.04.010 defines "telecommunications company" as an entity "owning, operating or managing any *facilities* used to

---

[5]     Renton     Ordinance     5944     (Nov.     18,     2019), https://edocs.rentonwa.gov/Documents/DocView.aspx?id=8056615&dbid=1&rep o=CityofRenton&cr=1 [https://perma.cc/M6JN-7TYU].  As seen on page 6 of the ordinance, RMC 5-11-1 was recodified as 5-11-4 in 2019 after the audit period at issue.

[6] Renton Ordinance 5944.  As seen on pages 5 and 7 of the ordinance, this definition was replaced in 2019 after the audit period at issue.

provide telecommunications for hire, sale, or resale[.]"  RCW 80.04.010(28) (emphasis added).[7]

On appeal, TracFone makes two arguments as to why it falls outside the statutory definition of "telephone business."  Both arguments fail as a matter of law.[8]

TracFone first argues that the legislature intended to permit cities to tax only telecommunications companies because the *exception* requires the charges to be imposed upon "*another* telecommunications company."  (Emphasis added) (citing RCW 35A.82.060(1)).  To TracFone, the word "another" implies there are two "telecommunications companies" and proves that "the Legislature had presumed, in drafting and enacting RCW 35A.82.060(1), that it was only authorizing cities to impose telephone utility tax on 'telecommunications companies[.]'"  In other words, TracFone claims, when the legislature limited the tax on "another" telecommunications company, it presumed the first taxed entity was also a telecommunications company.

---

[7] Although RCW 35A.82.060(3) references only "the definitions in RCW 82.04.065 and 82.16.010," neither party contests the applicability or use of this definition from RCW 80.04.010(28).

[8] As acknowledged by TracFone at oral argument, this issue is "a *pure question of law* regarding the authority of [Renton] to impose telephone utility tax on the activity of selling prepaid wireless airtime by a person that's not a telecommunications company."  Wash. Ct. of Appeals oral argument, supra at 7 min., 6 sec., through 7 min., 23 sec. (emphasis added).  TracFone also did not argue in its brief that resolution of whether it is taxable as a "'telephone business'" turns on disputed questions of fact.  Quoting RCW 82.16.010(7)(iii), TracFone argued that the "parties do not dispute that TracFone purchases airtime from network carriers, and that this airtime is subsequently resold to consumers; the relevant question is whether, *as a legal matter*, it is TracFone or the network carriers that provide 'access to network telephone service.'"

In turn, according to TracFone, we should construe the term "telephone business" as "synonymous" with "telecommunications companies," which again refers to an entity with physical facilities. Under this interpretation, TracFone would not be subject to the tax as they have no physical network facilities of their own.

TracFone's argument is unpersuasive as our Supreme Court has explained that "[d]ifferent statutory language should not be read to mean the same thing: '[w]hen the legislature uses *different words* in the same statute, we presume the legislature intends those words to have *different meanings*.'" Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd., 182 Wn.2d 342, 353, 340 P.3d 849 (2015) (emphasis added) (second alteration in original) (quoting In re Pers. Restraint of Dalluge, 162 Wn.2d 814, 820, 177 P.3d 675 (2008) (Sanders, J., dissenting)). That means, if the legislature intended for the statute to apply exclusively to "telecommunications companies," it would have used only that term. Instead, the legislature deliberately used the term "telephone business" in RCW 35A.82.060(1), strongly suggesting their intent for a broader statutory scope.

Here, TracFone acknowledges it "purchases wireless airtime from facilities-based carriers, like AT&T and T-Mobile, then resells this airtime on a prepaid basis at retail (to consumers) and at wholesale (to retailers and distributors)." The definitions of "telephone business" contained in RCW 82.16.010 and former RMC 5-11-3 turn on whether the party is providing "access" to telephone networks. RCW 82.16.010(7)(b)(ii); Former RMC 5-11-3. TracFone's business of selling

wireless airtime to end users for the express purpose of having "access"[9] to numerous telephone networks, plainly fits under this definition.

TracFone next argues that RCW 35A.82's more general taxing authorization is "too vague to override" the statute's more specific provisions, including the exception reviewed above. However, we do not evaluate the exception in isolation but consider "the statutory scheme as a whole" and "[i]f, after this inquiry, the statute remains ambiguous or unclear, [then] legislative history." Lenander, 186 Wn.2d at 405.

Even assuming *arguendo* that the statute is ambiguous, the holding in Sprint Int'l Commc'ns Corp. v. Dep't of Revenue, 154 Wn. App. 926, 226 P.3d 253 (2010), resolves any such ambiguity. There, while addressing a different type of tax (retail sales) of a more antiquated form of telecommunications technology but in a related statutory scheme (RCW 82.04), Division Two of this court similarly considered whether that technology service was a "network telephone service" subject to the tax. Id. at 929-32. In addition to a plain language interpretation of the term "telephone service," we held that "[t]he legislature intentionally enacted a broad definition [of that term] to encompass emerging competitors of the regulated telephone industry" and, knowing "that technology in the telecommunications industry was advancing rapidly, [still] chose to provide specific exemptions for

---

[9] Merriam-Webster defines "access" as "freedom or ability to obtain or make use of" something. Access, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993); Echo Global Logistics, Inc. v. Dep't of Revenue, 22 Wn. App. 2d 942, 947, 514 P.3d 704 (2022) (quoting First Student, Inc. v. Dep't of Revenue, 194 Wn.2d 707, 711, 451 P.3d 1094 (2019)) ("In a plain meaning inquiry, the court 'may resort to an applicable dictionary definition to determine the plain and ordinary meaning of a word that is not otherwise defined by the statute.'").

emerging businesses instead of limiting the statute's scope." Id. at 936.

Applying that principle here, we hold that the legislature's use, on the one hand, of the broader term "telephone business" in RCW 35A.82.060's taxing authority provision and its use, on the other hand, of the more narrow term "telecommunication compan[ies]" in the exception evinces an intent to grant taxing authority broader in scope than a relatively more narrow limitation to that taxing authority. The plain language interpretation above, thus, is consistent with this view of legislative intent and does not depend as TracFone argues on one part of the text overriding any other.[10]

In sum, we hold that RCW 35A.82.060's delegation of taxing authority is not limited to "telecommunications companies." And, TracFone's business plainly falls under the broader definitions for "telephone business," as defined by RCW 82.16.010, and, thus, that business, subject to any limitation discussed further below, is subject to Renton's utility tax.

D.    Whether TracFone's Wholesale Business Sales are Exempt from the Tax as a "Resale"

TracFone argues that, even assuming its direct consumer sales (e.g., online or over the telephone) are subject to the tax, its wholesale business sales to retailers (such as convenience stores or supermarkets) should be exempted from Renton's tax under the third clause of RCW 35A.82.060(1). We disagree.

The third clause of RCW 35A.82.060(1) provides that cities "shall not

---

[10] TracFone also argues that because the statute is ambiguous, then any such ambiguity should be held against Renton. As the meaning of "telephone business"—whether under its plain language or pursuant to its clear legislative intent—is unambiguous, we need not reach this argument.

impose the fee or tax on . . . charges for *network telephone service* that is *purchased for the purpose of resale*[.]"  RCW 35A.82.060(1) (emphasis added).  Again, RCW 82.16.010 defines "network telephone service" in part as "the providing by any person of *access* to a telephone network . . . [.]"  RCW 82.16.010(7)(b)(ii)  (emphasis added).  Thus, it is the "access" to a network that must be "purchased" for "resale."

The terms "purchase" and "resale" are not defined in RCW 35A.82.060(1).  Looking to a standard dictionary, to "purchase" is to "acquire" or "obtain."  Purchase, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d Ed. 1993).  And a "resale" is defined as a "retailer's selling of goods, *previously purchased* from a manufacturer or wholesaler . . . to consumers or *to someone else* further down the chain of distribution."  Resale, BLACK'S LAW DICTIONARY 1562 (11th ed. 2019) (emphasis added); see also Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 528, 243 P.3d 1283 (2010) ("When a statutory term is undefined, the words of a statute are given their ordinary meaning, and the court may look to a dictionary for such meaning.") (quoting State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010)).

The question then is whether there is a genuine issue of material fact that a retailer "acquires" or "obtains" "network telephone service"—here defined as "access to a telephone network" (such as AT&T or T-Mobile's)—in its transaction with TracFone, which the retailer then sells to a third party, such as an individual consumer.

We hold first that Renton met its initial burden to show there is no genuine

issue of material fact in dispute that a retailer does not "acquire" and "sell" "access to a telephone network" because TracFone, not the retailers, retains control over the end user's access to a telephone network, when viewed from the perspective of the end user, the retailer, or the telephone network carrier.

As a preliminary matter, "while tax statutes generally are interpreted in favor of the taxpayer, exemption statutes are construed strictly against the taxpayer, and the taxpayer has the burden of establishing any exemption." Port of Seattle v. Dep't of Revenue, 101 Wn. App. 106, 112, 1 P.3d 607 (2000). Moreover, "taxation is the rule and exemption is the exception, and where there is an exception, the intention to make one should be expressed in unambiguous terms." Columbia Irrig. Dist. v. Benton County, 149 Wash. 234, 240, 270 P. 813 (1928); accord HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 455, 210 P.3d 297 (2009).

Renton first proffers evidence that customers who purchased TracFone's services through a retailer or distributor are reliant on TracFone, and TracFone alone, to initiate and utilize their airtime. Renton offered, by way of example, a TracFone pre-paid card with the instructions to the purchaser which stated that "[t]o Activate your service, go to Tracfone.com or call 1-800-867-7183." Alternatively, the card indicated that customers "may activate [their] Service online by visiting our website at tracfone.com . . . or by calling Customer Care." Further, TracFone's terms and conditions of service for such cards further stated that "Tracfone Service can only be activated where Tracfone Service is offered and supported by TracFone" and that it retains the right to end the customers' access to their network telephone service "for any reason in our sole discretion" in the

event the terms are violated. In short, Renton provided evidence that customers rely on TracFone to activate and maintain their access to network telephone service, without any reference to the retailer.

Renton's evidence also indicates TracFone similarly manages control of its airtime in its contracts with retailers. In its contract with a national convenience store, for example, the retailer's role is limited to housing and selling TracFone's "airtime codes" with no mention of managing the provision of network services. In its agreement with a national grocery store, TracFone expressly retains full responsibility for activating the product, further stating that the codes are not enabled or activated at the time they are delivered to the retailer.[11]

Finally, Renton offers TracFone's own contracts with telephone networks to show TracFone was not permitted to sell such access to the retailers. For example, the language of TracFone's contract with T-Mobile states that the "DEALER [i.e., TracFone[12]] *may not sell* or distribute the [cellular radio service] CRS to End Users[13] for an End User's resale or further commercial distribution of

---

[11] TracFone provides a declaration, to be discussed in further detail below, that asserts "*some* prepaid wireless airtime that TracFone sells at wholesale to customers like Walmart is active at the time the airtime cards are shipped to the wholesale customer, while some . . . [are] activated at the register immediately prior to the retailer's retail sale to a customer." (Emphasis added). Regardless of the mechanics of the activation process, this evidence does not disturb the central point that it is TracFone, through its contract with, e.g., AT&T, that underlies the service (i.e., access to the network) and not the retailer, which has no relevant contract with, e.g., AT&T, to sell access to its network. There is no claim in that declaration that the *retailer* activates the card or can terminate a customer's access at *its* discretion.

[12] Under the contract, "'DEALER' shall mean TracFone Wireless, Inc."

[13] Under the contract, "'End User' shall mean a Person who purchases CRS from DEALER." "'Person' shall mean any individual, subsidiary, corporation" and numerous "other entit[ies]." And "'CRS' shall mean cellular radio service provided

17

the CRS." (Emphasis added). In other words, if a retailer is viewed as an "end user" and recipient of access to the network, TracFone could not permit the retailer by contract to resell that access.

Further, the T-Mobile contract states that "DEALER is solely responsible for providing all customer care to End Users." And the T-Mobile contract states that the "DEALER is solely responsible for the computation and collection of all applicable taxes or other governmental charges[.]"[14] Pursuant to the same, TracFone's contract with a given retailer must "[i]nclude with each unit of Product sold . . . all documentation and end user agreement for such Product and [the retailer] *shall not modify or supplement the terms thereof*." (Emphasis added.) In other words, the provisions of its contracts with networks extends into and binds the contracts with retailers.

In all these ways then—whether from the perspective of the customer, the retailer or the network carrier—Renton has put forth sufficient evidence to meet its initial burden that there is no genuine issue of material fact that TracFone does not and may not sell airtime to a retailer for resale.

The "burden then shifts to the nonmoving party to present evidence that an issue of material fact remains." Haley, 25 Wn. App. 2d at 216. We hold that TracFone fails to meet its burden.

First, TracFone argues that it is internally "inconsistent" for Renton to argue that TracFone is conducting "telephone business" (which is providing network

---

by CARRIER (through its own facilities or those of a Roaming Center)[.]" "'CARRIER'" in this example is T-Mobile.

[14] TracFone's contract with Sprint contains similar provisions.

services) for purposes of being subject to the first clause of RCW 35A.82.060(1), but not conducting "telephone business" when selling its cards to Walmart for purposes of the exception to (found in the third clause of) the law.

There is a superficial appeal to this argument. However, there is a material conceptual distinction between (a) what TracFone is doing when it sells immediate access to telecommunication companies' networks directly to customers, e.g, online, and (b) what it would be doing if it actually sold network access to a retailer. In the latter situation, the retailer would then be in control of and providing access to the network. The distinction in the statute is clear and the analysis is rightly different precisely because it reflects the structure of the exception: a city may tax provision of access to network telephone services but not tax the sale of access to network telephone services meant only for resale. The latter would constitute the double-dipping, expressly exempt under the third clause of RCW 35A.82.060.

TracFone also argues more broadly that this issue presents a "mixed question of fact and law with respect to whether the sale of the airtime to retailers and distributors were charges for network telephone services for the purposes of resale." And, TracFone avers that a genuine issue of material fact has been created by the supplementary testimony of Chesley Dillon, TracFone's Vice President of Corporate Taxation, who makes a variety of different factual claims.

Specifically, TracFone asserts "there is strong evidence that TracFone *does* sell airtime [i.e., access to a telephone network] to retailers, and that these sales *are* made for the purpose of resale," offering first (a) Dillon's statement that "revenue from its wholesale sales [are internally accounted for] as *airtime* revenue"

19

and (b) "resale certificates, which certify that retailers are buying airtime 'for resale …'." Second, TracFone offers Dillon's declaration which claims that "TracFone does not control the price at which retailers . . . resell the prepaid wireless airtime" and that "the amounts charged by retailers . . . is *not* TracFone's income, it is the income of the retailer who makes the retail sale." Third, Dillon claims that "TracFone does not collect Washington sales tax or Washington E-911 tax on its wholesale sales of prepaid wireless airtime." None of these assertions defeat summary judgment in Renton's favor.

None of Dillon's testimony or TracFone's other evidence address the crux of the resale issue, namely, whether a *retailer* "purchased" and "resold" access to telephone networks, as required under former RMC 5-11-1 and RCW 35A.82.060(1).

Addressing each item of evidence TracFone offers, TracFone's internal accounting characterizations, procedures or certifications are irrelevant to this determination. See, e.g., Rho Co., Inc. v. Dep't of Revenue, 113 Wn.2d 561, 573, 782 P.2d 986 (1989) ("the Board will have to look beyond the contractual labels placed on the parties' relationships").

As to the second piece of evidence, again, Renton provided evidence that, in TracFone's contractual obligations with the consumers, retailer and networks, TracFone retained control over how consumers receive access to a carrier's cellular radio network, irrespective of whether retailers set their own price for the access cards or they retain some income for those sales. The relevant point is that the retailers never did or could "purchase" control over access to the network

for resale. TracFone did not offer evidence controverting its control over the service provided to end users, regardless of the various financial benefits its many retailers obtained.

As to Dillon's third statement regarding sales tax or Washington E-911 tax, TracFone asserts that separate state taxes are imposed on retail sellers, meaning that if "TracFone were the actual seller, then it—not the retailers—would collect these taxes." It is not obvious to us how Washington's imposition of a wholly separate tax (sales or 911) on a retailer or distributor has any bearing on our consideration of Renton's ability to impose a different type of tax (utility) on a different type of activity (the telephone business).

TracFone's conclusory allegation, moreover, is not accompanied by any citation to binding legal authority or the record. In other words, TracFone does not explain how this alleged fact (that retailers collect sales tax but TracFone is still responsible for tax on the network) holds any bearing on the questions of law surrounding TracFone's municipal tax liability. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").[15]

---

[15] TracFone also argues that the holding in City of Springfield, 557 S.W.3d at 446, that TracFone's airtime sales to retailers in Missouri are "legitimate wholesale sales" and not "consignment" sales is relevant to our decision. The term "legitimate wholesale sale" is undefined and unexplored in the opinion, and we have no reason to believe that a "consignment" sale under Missouri law (a term which does not appear in the opinion) is the same as a "resale" under RCW 35A.82.060(1). Moreover, the Missouri court was considering, under its appellate procedures, whether there was substantial evidence for the trial court's finding that those sales were "legitimate sales." It was not a finding, as a matter of law, as here, that the

21

Turning to controlling authority, we hold that the present case is in line with our Supreme Court's previous examination of TracFone's business of selling inter alia "airtime cards through numerous mass market retail stores." TracFone Wireless, Inc. v. Dep't of Revenue, 170 Wn.2d 273, 296 n.15, 242 P.3d 810 (2010). While TracFone addressed a different type of tax on a partially different business model, our Supreme Court still flatly held that "TracFone, not the retail store, provides the service." Id. In remarkably similar terms, our Supreme Court noted that this was so in part because "TracFone is responsible for activation and assignment of radio access lines to the subscribers," not the retail stores through which TracFone distributes its products. Id. Also similarly, it was additionally noted that "[i]f there are problems requiring service, TracFone, not the retail store, provides the service." Id. For this reason among others, the court held that "there is no ambiguity in the statutes as to what is being taxed, how the tax is to be assessed, or whether the tax is owed." Id. at 296.

Here, the earlier discussed evidence is not contradicted or generative of any factual dispute that, as in TracFone, TracFone retains control over the actual provision of network telephone service, including provision of access to a telephone network.

Additionally, as amicus Washington State Association of Municipal Attorneys argues, the statutory scheme here is analogous to and consistent with other public utility taxes, including those on water or gas services. For example,

---

sale of its cards to retailers falls within or out of a specific tax exemption. Thus, this case is not relevant to this dispute.

"income from the sale of natural gas by a gas distributing company to natural gas companies located in Washington, who resell the gas to their customers, is deductible from the gas distributing company's gross income." WAC 458-20-179(202)(e). The natural gas companies are providing the gas to the end user, not the gas distributing companies, and the tax only applies on the provision of service to the end user. Id. Similarly, as amicus correctly argues, in the present case, "the service is being provided to the customer through TracFone, not the retailers," who are the equivalent to a gas distributing company.

A final reason for our holding is that retailers and distributors cannot be taxed as a "telephone business." A retailer having no independent right to sell access to a telephone network is not subject to the challenged tax because, without TracFone's contract with a network carrier, it is plainly not a "telephone business" under RCW 82.16.010 or former RMC 5-11-3. As such, if this court permitted TracFone to avail itself of this taxation exemption, it would result in no taxation at all for the sale under this alleged "resale" arrangement, which cannot be the legislature's intent when authorizing the tax.

Going further, under TracFone's logic, it could avoid all tax on a taxable service by simply abandoning its online direct sales business and conducting all of its sales through a retailer. That result would be contrary to both our Supreme Court's admonition to avoid absurd results and the presumption against exemptions from taxation. Jespersen v. Clark County, 199 Wn. App. 568, 578, 399 P.3d 1209 (2017) ("we construe a statute to avoid absurd results"); HomeStreet, Inc., 166 Wn.2d at 454-55.

23

In sum, we hold that there is no genuine issue of material fact that TracFone's wholesale sales do not fall under RCW 35A.82.060(1)'s resale exemption.

### III.    CONCLUSION

For the reasons above, we affirm the hearing examiner's grant of summary judgment.

_Díaz, J._

WE CONCUR:

_Birk, J._          _Brennan, J_